FINLEY, Appellant, v. STEELE et al.

Division Two, December 18, 1900.

1. **Libel:** QUALIFIED PRIVILEGE: RECOVERY.  A qualified privilege ex-
tends to all communications in which the party communicating has
an interest, or in reference to which he owes a duty to a person hav-
ing a corresponding interest or duty, and also, to cases where the
duty is not a legal one if it is of a moral or social character.
In such cases the party defamed may recover notwithstanding the
qualified privilege, if he can prove that the words were not used in.
good faith, but that the writer of the defamatory publication will-
fully and knowingly availed himself of such privilege for the pur-
pose of defaming the plaintiff.

2. ———: ———: ———: MALICE.  In such case actual malice must
be proved before there can be a recovery, and in the absence of such
proof a nonsuit should be forced.   The mere fact that the publication
was false does not show malice, if it was based upon a reasonable or
probable cause.

3. ———: ———: SCHOOL TEACHERS AND BOARD.  Charges prepared
by a school board against their teacher and sent to the county com-
missioner, asking him to revoke his certificate, if clothed in the sub-
stantial, though not exact, words of the statute which authorized the
revocation of a certificate, and made on a proper occasion, from a
proper motive, and based on a reasonable cause, are privileged mat-
ter, and if no actual malice was shown there can be no recovery, al-
though such charges were withdrawn before an investigation was
held.

Finley v. Steele.

Appeal from Vernon Circuit Court.—*Hon. D. P. Stratton,* Judge.

AFFIRMED.

*Scott & Bowker* and *J. B. Johnson* for appellant.

(1) This communication is not absolutely privileged as it was not made in any parliamentary, judicial, naval or military proceeding—and even if it was in a judicial proceeding, the absolute privilege has its limits and may be lost if the parties use it as a cover to vent private malice. Newell on Defamation, p. 425, sec. 30, and p. 460, sec. 51; Hyde v. McCabe, 100 Mo. 412. (2) Conceding that it is entitled to a qualified privilege, yet in using the words "indecent," "tyrannical," etc., defendants lost the benefit of even their qualified privilege as such charges were in "excess of the occasion" and improper and unjustifiable. Sec. 9805, R. S. 1899; Callahan v. Ingram, 122 Mo. 355; Moore v. Miller, 59 Mo. App. 16; Webb's Pollock on Torts, p. 332. (3) Defendants lost their privilege because the communication was false and malicious. Hyde v. McCabe, 100 Mo. 412; Townshend on Slander, sec. 245; Newell on Defamation, p. 392, sec. 10, and p. 391, sec. 7. (4) Whether the occasion is such as to make the statement a privileged one is for the court, but whether the defendants have abused and lost their privilege is for the jury, as malice and other questions of fact are involved. Hyde v. McCabe, 100 Mo. 412; Sullivan v. Com. Co., 152 Mo. 283. (5) This communication is libelous *per se* as it is injurious to plaintiff in her profession as a school teacher and unless defendants are protected by "privilege" she is entitled to a verdict. Spurlock v. Lombard Co., 59 Mo. App. 225; Herman v. Bradstreet Co., 19 Mo. App. 227;

Mitchell v. Bradstreet Co., 116 Mo. 240.   (6) This being an action for libel, the case should not be taken from the jury, as they are the judges both of the law and the fact so far as the libel is concerned, unless the privilege is unconditionally absolute.   Sec. 14, art. 2, Constitution; State v. Armstrong, 106 Mo. 418; Arnold v. Jewett, 125 Mo. 241, 251.

*Brown, Harding & Brown, Wight & Wight* and *W. C. Todd* for respondents.

(1) There is no dispute as to the circumstances under which the letter was written.   Whether the communication is or is not privileged by reason of the occasion, is always a question for the court, when there is no dispute as to the circumstances under which it was made.   Biglow's Odgers on Libel and Slander, p. 169; Callahan v. Ingram, 122 Mo. 355; Newell on Defamation, Slander and Libel, p. 391, sec. 9; 13 Am. and Eng. Ency. of Law, p. 406; Odgers on Libel and Slander, p. 183.   (2) The letter complained of was an official communication sent to the county school commissioner by the board of school directors preferring charges against the teacher.   They had corresponding interests and corresponding duties, and were protected by absolute privilege.   Biglow's Odgers on Libel and Slander, p. 167; Townshend on Libel and Slander (4 Ed.), p. 296.   (3) The pleadings bring this case clearly within the privileged class.   But appellant contends it is only a "qualified" privilege.   Even in that case the additional burden is placed on appellant of showing that the letter was entirely false, groundless and expressly malicious, and that respondents did not believe the complaints made to them by the patrons of the school, and did not predicate the letter complained of on such complaints, but acted in bad faith with the sordid intention of injuring plaintiff

under the cloak of duty. Wieman v. Mabee, 40 Am. Rep. 477; Henry v. Moberly, 33 N. E. 981; Van Wyck v. Aspinwall, 17 N. Y. 190; Marks v. Baker, 9 N. W. 678; King v. Patterson, 9 Atl. 705; Montgomery v. Knox, 3 So. 211; Biglow's Odgers on Libel and Slander, 168-173. (4) Even a "qualified" privilege defeats the presumption of malice, and malice is not shown by proof of the falsity of the letter. In this case plaintiff not only failed to prove the falsity of the letter but established a well-founded ground for writing it. Ormsby v. Douglass, 37 N. Y. 477; Nemmens v. Nelson, 138 N. Y. 517; Wieman v. Mabee, 40 Am. Rep. 477; Stewart v. Hall, 83 Ky. 375.

BURGESS, J.—This action is prosecuted by plaintiff against defendants for $10,000 damages claimed to have been sustained by her by reason of an alleged libelous communication written by defendants to one R. L. Walker.

At the time of the publication of the communication, plaintiff was engaged in teaching school at district number 131, in Vernon county. Defendants were members of the school board of the district, and Walker was the county school commissioner of the county.

The communication which forms the basis of the action is as follows:

"Richards, Mo., Feb'y 27, 1897.

"Mr. Robert T. Walker, Com.:

"Dear Sir:—We, the undersigned directors of school district No. 131, would most respectfully ask you to revoke the certificate to Mrs. Lou Finley who at present has charge of our school. From the most reliable and conclusive evidence in our possession, we must say that she is totally unfit to teach our school. · She is very tyrannical and abusive and indecent, and our school is doing no good. We have trouble

more or less all the time and have hoped after having called her in and talked over the matter with her that she would get along better, but things are getting worse. We could not enumerate all the charges that have been preferred, but she has kept some of the small boys in until one had to respond to nature in his pants and another had to make a run for it and afterwards to punishment for it. She has whipped unmercifully, pulled their ears and otherwise mistreated them until they do not respect her. ·She has called the children liars. · And hoping you will take immediate action,

"We are, yours,

"E. T. Steele,
"J. D. Todd,
"J. H. Fouts,
"Members of Board."

Defendants by answer admit writing and sending to Walker, the school commissioner, the communication in question, and then allege that it was written in the discharge of their duties as members of the school board of said school district, and without malice, under substantially the following state of facts:

The school term began in September, 1896. Shortly thereafter plaintiff had trouble with several of her pupils. During the fall, complaints against plaintiff as teacher were made to the board of directors. In December, a petition signed by twelve patrons of the school complaining of appellant and requesting the board to ask her to resign, was presented to the board. Letters and informal complaints were sent by the patrons of the school to County Commissioner Walker, who, in response to the complaints made in December, wrote to the board asking about the trouble between appellant and her pupils. On account of the complaints, the

board called appellant before it and requested her to resign. She refused. It then passed resolutions requesting her to resign. She still declined. Defendants then filed the charges complained of with County Commissioner Walker. Upon receipt of the charges the school commissioner notified the plaintiff that charges had been preferred against her, and set a day for the investigation of them, but the charges were withdrawn before the investigation was had.

At the conclusion of plaintiff's evidence the court instructed the jury to find for defendants. Plaintiff appeals.

The publication in question was with respect to plaintiff as school teacher, and is upon its face clearly defamatory, and if false, actionable *per se*, unless absolutely or qualifiedly privileged.

Absolutely privileged publications are legislative and judicial proceedings, naval and military affairs, while a qualified privilege "extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he owes a duty to a person having a corresponding interest or duty; and to cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation." [13 Am. and Eng. Ency. of Law, 411.]

In case of absolute privileged communications the law, out of its regard for the public welfare, considers that all persons shall be permitted to express their sentiments regardless of their truth, and affords them absolute immunity from any prosecution therefor either civil or criminal, although the publication may be knowingly and willfully false, and with express malice. [Newell on Slander and Libel (2 Ed.), 418.]

There are certain restrictions, however, as to this class of publications as to when published in order that they may be

privileged.   In case the publication is only a qualified privilege, the "party defamed may recover notwithstanding the privilege, if he can prove that the words used were not used in good faith, but that the party availed himself of the occasion willfully and knowingly for the purpose of defaming the plaintiff."   [Newell on Libel and Slander (2 Ed.), 475.]

But from our standpoint we think it unnecessary to decide whether or not the facts disclosed by the record bring the publication, because of its quasi-judicial character, within that class called "privileged," provided the communication was a qualified privilege.

In Byam v. Collins, 111 N. Y. 143, it is said:   "A libelous communication is regarded as privileged, if made *bona fide*, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, if made to a person having a corresponding interest or duty, although it contains criminating matter which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect obligation."

In speaking of the proper meaning of privileged communications in Klinck v. Colby, 46 N. Y. 427, it is said: "The proper meaning of a privileged communication, is said to be this: that the occasion on which it was made, rebuts the inference arising, *prima facie*, from a statement prejudicial to the character of the plaintiff; and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill will, independent of the circumstances in which the communication was made." But when the paper published is a privileged communication, an additional burden of proof is put upon the plaintiff, and he must show the existence of express malice.

It is announced in Marks v. Baker, 28 Minn. 162, that

Vol. 159 Mo—20

"the rule is that a communication made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged; that in such case the inference of malice . . . . is cast upon the person claiming to have been defamed."

"Malice in such case is not shown by the mere fact of the falsity of the publication." [Henry v. Moberly, 6 Ind. App. 490; Stewart v. Hall, 83 Ky. 375.]

In Briggs v. Garrett, 111 Pa. St. 404, it was held that a communication to be privileged must be made on a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith the law does not imply malice from the communication itself as in the ordinary case of libel.

Actual malice must be proved before there can be a recovery, and in the absence of such proof a nonsuit should be granted.

Section 8030, Revised Statutes 1889, confers upon the school commissioner of each county the power, and imposes the duty to examine all persons presenting themselves for teachers in the county of which he is commissioned, and if found qualified to grant them certificates as teacher of public schools within the county. It also provides that such certificate "may be revoked for *incompetency, cruelty, immorality, drunkenness or neglect of duty,* when satisfactory proof thereof is furnished the commissioner, all charges to be preferred in writing and signed by the party or parties filing the accusation."

At the time of the publication of the alleged libel, defendants composed the school board of the school district in which plaintiff was teaching. They knew that she had had

Finley v. Steele.

trouble with her pupils, and a petition signed by twelve patrons of the school complaining of her, had been presented to them as a board, requesting them to ask her to resign.  Complaints had also been made to the school commissioner, who in consequence thereof wrote to the board asking about the trouble between plaintiff and her pupils.  On account of these facts the board called plaintiff before it and asked her to resign, but she declined to do so, and as a last resort, they prepared, in substantially the words of the statute, the charges against her which form the basis of this litigation, and sent them to the commissioner.  They not only had an interest in regard to the way in which the school was being conducted, but in preferring the charges against the plaintiff were simply discharging their duty as members of the school board, and it makes no difference that the exact words of the statute were not used, or that some word not embraced therein was used, the purpose and intent was the same.  There was no actual malice proven, and the use of such word or words did not take away the privileged character of the communication. Intent makes the libel in such circumstances.

The communication was made on a proper occasion, from a proper motive, and was based upon a reasonable cause.  It was made in apparent good faith, and under these circumstances the law does not imply malice—and as there was no proof of express malice the plaintiff was not entitled to recover.  The judgment is affirmed.

*Gantt, P. J.,* and *Sherwood, J.,* concur.