## W. L. HOFF v. PURE OIL COMPANY AND ANOTHER.[1]

November 19, 1920.

No. 21,879.

**Libel and slander—privileged communication.**

> In an action to recover damages for an alleged libel, *held*, that a communication in the form of questions and answers concerning the standing of a former employee, to a party who, by his authority, requested it, is privileged, and is not a publication of any libel contained therein for which the law affords a remedy, in the absence of proof of express malice.

Action in the district court for Hennepin county to recover $10,000 for libel. The case was tried before Steele, J., who when plaintiff rested denied defendants' motion to dismiss the action, and a jury which returned a verdict for $2,000. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Fowler, Schmitt, Carlson & Furber,* for appellants.

*Robert M. Works* and *Harold W. Cox,* for respondent.

QUINN, J.

Action to recover damages for an alleged libel contained in a communication concerning plaintiff, a former employee of the defendant, to the Guarantee Company of North America. Plaintiff had a verdict and from an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed.

The defendant company was engaged in the sale and distribution of gasolene and oils throughout the city of Minneapolis. On June 18, 1915, the plaintiff, then in defendant's employ, took charge of one of its filling stations and continued to manage the same until April 21, 1916. The defendant delivered gasolene at its various filling stations by means of trucks equipped with tanks mounted thereon, divided into compartments holding a specified number of gallons each. These compartments

[1]Reported in 179 N. W. 891.

were provided with pipe connections so that gasolene could be transmitted without waste to underground tanks at the filling stations. They were filled with gasolene which was transferred into the underground tanks at the stations as needed. In this way the gasolene was measured out to the stations, the man in charge receipting therefor.

The rules of the company and the contract of employment required the person in charge to see that his station received the full amount of gasolene receipted for. He was then charged with the gasolene in accordance with such receipts and required thereafter to account for the same. It was also his duty to keep an account of all business done and report the same daily to the company. The company took an inventory of all the gasolene on hand on a certain day of each week. In case of a shortage the amount thereof was deducted the following week from the employee's wages. During the time plaintiff was in charge of such station there appeared a shortage in each of 27 weeks, ranging from twenty-three cents to over $20 a week, amounting in the aggregate to $205.43.

Subsequent to his quitting the defendant, plaintiff entered the employ of the Pittsburgh Coal Company. He was entrusted with the handling of money belonging to his employer and required to furnish a surety bond in the sum of $1,000. Accordingly he made application to the Guarantee Company of North America for such a bond, and in his application referred that company to the defendant Pure Oil Company for a recommendation. Thereupon the guarantee company made written inquiry of the defendant and received a reply thereto upon the same sheet of paper, which constitutes the alleged libelous article referred to in the pleadings herein and which is as follows:

Confidential Enquiry.                                                    No. ——

THE GUARANTEE COMPANY OF NORTH AMERICA FOUNDED BY
EDWARD RAWLINGS IN 1872, MONTREAL.

Pittsburg, Pa.  Aug. 29, 1918.

To the Pure Oil Co.,
          Minneapolis, Minnesota.
Dear Sir:

Mr. William L. Hoff of Robbinsdale, Minnesota, aged 27, is an applicant to this Company for a Bond of Suretyship in the sum of $1,000.00

to guarantee his honesty as foreman and weighmaster, yard No. 2 at Minneapolis, Minnesota, to Pittsburgh Coal Company of Wisconsin.

He states he was employed by or under Messrs. J. Hancock and E. E. Grant as selling at Minneapolis, Minnesota, from February 1915 to May 1917.

Your replies by return mail in the enclosed stamped envelope, to the following questions will be appreciated, received in confidence, and not involve you in any way. The courtesy of your immediate attention is respectfully solicited. Yours truly,

Henry E. Rawlings,
President and Managing Director.

Is he related to you? No.

How long have you known him? From 4 years 1914 to 1918.

By whom and where was he previously employed? Janney, Semple, Hill & Co.

How long was he with you? From 1914 to 1917.

In what capacity? Filling station man.

Had he custody of money or valuables? Yes.

Were his duties performed satisfactorily? No.

If not, what cause had you for complaint? Shortage.

Were his accounts, if any, always properly kept and in a satisfactory condition when he left? No.

Why did he leave? He could not keep his accounts straight.

Was he sober? While at work, yes. And moral? . . . .

Do you consider him trustworthy and a proper person to bond in the position named? I do not.

Signature, John Hancock,
Vice Pres.

Date, Aug. 30th. Address and Occupation, Pure Oil Company.

It is alleged in the complaint and admitted in the answer, that plaintiff applied to the Guarantee Company of North America for a surety bond, and in his application therefor referred that company to the defendant company for reference as to his fitness for the position with the Pittsburg Coal Company, and that in response to the inquiry made in pursuance thereof the defendant wrote and mailed to the guarantee

company the answers to the questions contained in the article complained of. It is also alleged in the complaint that the answers contained in such article so made by the defendants were false and malicious. No special damages are pleaded. The answer pleads justification and privilege.

It is contended by appellants that the evidence conclusively shows the answers to the questions in the communication complained of to be true, and insofar as they constitute conclusions, justified by the facts. Does the proof so show? If it does, then the defendants were entitled to a directed verdict as requested at the close of the testimony. It is well settled that proof of the truth of an alleged libel is a complete defense in a suit for damages where no special damages are pleaded. Thompson v. Pioneer-Press Co. 37 Minn. 285, 33 N. W. 856; see note 21 L.R.A. 504; see note 50 L.R.A.(N.S.) 1040; see note 31 L.R.A.(N.S.) 133; 25 Cyc. 413, and cases cited.

It is conceded that the plaintiff understood and agreed, when he took the management of defendant's filling station, that he would be held responsible for all goods, including gasolene, delivered at his station; that it was his duty to see that he received the full amount of gasolene receipted for, and that in case there was a shortage the amount thereof would be deducted from his wages. It is undisputed that the defendant's records of account with the plaintiff during the time he was in charge of the filling station were made up from the plaintiff's own receipts, written daily reports and inventories taken under his supervision.

By the communication in question defendants informed the guarantee company that plaintiff's duties were not performed satisfactorily on account of shortage; that his accounts were not properly kept and in a satisfactory condition when he left; that he left because he could not keep his accounts straight, and that they did not consider him trustworthy and a proper person to bond in the position named.

The plaintiff testified in effect that he was held for whatever shortages there were; that they had shortages practically all winter; that the shortages were taken out of his wages each week, and that he received a statement of his accounts at the time so he could see the amount of his wages and the amount of shortage and that he would get a check for the difference. He also testified that he quit the employ of the defendant on account of such shortages because the last week he received no check at

all. The defendant's records, including reports made by the plaintiff, were put in evidence. A summary made up from the same showed that plaintiff's account for the time he had charge of the station, a period of 45 weeks, was short in each of 27 weeks. The showing as to shortage stands unchallenged, except that it appears that a certain delivery tank was used during the last three weeks of plaintiff's service that held 11 gallons less than it was labeled, and to this extent the shortage account for that time was not correct, but this discrepancy could affect the shortage only during the last three weeks.

We think the admitted circumstances, taken into consideration with the plaintiff's own testimony, conclusively establish that there was an habitual shortage in plaintiff's accounts while he was in charge of the filling station. The amount thereof was regularly deducted from his weekly wages and no protest appears to have been made by him. From an examination of the entire record we are of the opinion that the proof establishes the truth of the answers contained in the communication and justifies the answer to the last question therein. A communication in the form of questions and answers, concerning the standing of a former employee, to a party who, by his authority, requested it, in the absence of express malice, is privileged, and is not a publication of any libel contained therein for which the law affords a remedy. Kansas City, M. & B. R. Co. v. Delaney, 102 Tenn. 289, 52 S. W. 151, 45 L.R.A. 600; 25 Cyc. 392; Billings v. Fairbanks, 136 Mass. 177; Beeler v. Jackson, 64 Md. 589, 2 Atl. 916; Hebner v. Great Northern Ry. Co. 78 Minn. 289, 80 N. W. 1128, 79 Am. St. 387. The inquiry and the reply thereto were in the nature of a confidential communication. They were so labeled and treated so far as appears from the record. They were issued at the special instance of the plaintiff. The only publicity given the answers contained therein was in making them known to the guarantee company. The record presents no evidence sufficient to justify a finding of express malice. It follows that the defendants were entitled to a directed verdict.

Reversed.

HALLAM, J. (dissenting).

It was conceded that part of plaintiff's alleged shortage was not a shortage at all, but that the apparent shortage was the result of use of a

tank not properly gauged. It is conceded that shortages were so common as to be almost habitual, on the part of other filling station employees, and yet no charge of dishonesty. No claim is made that plaintiff ever misappropriated funds. It seems to me the jury might find from these facts that the apparent shortages were not real.

The occasion was not privileged as the syllabus and part of the opinion states, without qualification, but only qualifiedly privileged. If the statement was maliciously made the occasion offered no protection. Hebner v. Great Northern Ry. Co. 78 Minn. 289, 80 N. W. 1128, 79 Am. St. 387.

It seems to me that there was evidence of malice to be submitted to the jury. The facts above stated were known to defendant Hancock. In addition to this there is evidence that Hancock was prompted by ill feeling. When asked by plaintiff "why he could not pass me on the bond" he answered "you can't hire any of my men away from me without getting a comeback. I will teach you something, young fellow," referring evidently to the fact that, after leaving defendant oil company's employ, plaintiff had entered the employ of another oil company and had hired one of the men employed by said defendant.

DIBELL, J. (dissenting).
I concur in the dissent of Justice Hallam.