## MERKEL v. CARTER CARBURETOR CORPORATION.

## TOAL v. CARTER CARBURETOR CORPORATION.

Nos. 13830, 13831.

United States Court of Appeals Eighth Circuit.

June 21, 1949.

Victor A. Wallace, St. Louis, Mo. (John T. Hughes, St. Louis, Mo. on the brief), for appellants.

Wm. R. Gentry, St. Louis, Mo. (John L. Farrell, New York City, on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

These were actions brought by appellants against appellee to recover damages for alleged slander and libel. They were consolidated for trial and are presented here on a single record. The amended complaints on which the actions were tried were substantially identical except for the names of the plaintiffs. The complaints alleged two causes of action. They alleged that both plaintiffs were employed by the defendant as inspectors of parts known as A–2 Artillery fuse body; that the defendant maliciously and falsely accused them of the crime of sabotage and accused them of not carrying on or performing their duties according to the rules and regulations of the defendant, but were hindering the war effort and cheating and defrauding defendant and the United States; that they had no right to inspect the products described as they had been doing; that they were not inspecting them 100 per cent as instructed; that they were working on parts for the United States Army and 100 per cent inspection was mandatory, and that by failing to make inspection according to the rules and regulations they were endangering the lives of "our boys at the front." It was also alleged that among those present at a meeting or conference between plaintiffs and the defendant's officers, where a Mr. Main of the Federal Bureau of Investigation, and a Captain Hume of the United States Army who were present at the instigation of defendant, on which occasion it was charged that serious crimes had been committed at defendant's place of business by plaintiffs and that they were guilty of sabotage, hindering the war effort and cheating and defrauding the defendant and the United States. In the second cause of action it was charged that defendant on February 22, 1945, published on a certain form used in its business and styled "separation notice," certain false and defamatory, malicious and libelous language of and concerning plaintiffs as follows, to-wit: "Discharged for improper inspection of A–2 Artillery fuse body." Each complaint contained charges relative to damages resulting to plaintiffs, including physical as well as mental suffering.

Defendant in its answer to each amended complaint admitted all allegations going to the jurisdiction of the court, admitted that plaintiffs were discharged from its employ on February 22, 1945, but denied the allegations as to the speaking of slanderous words; admitted issuing the "notices of separation," and in effect denied all other material allegations. It alleged affirmatively that whatever statements were made, referred to in plaintiffs' amended complaints, were made in the course of discussion between plaintiffs and officers, employees and representatives of the defendant; that all persons who were present were interested in the subject matter of the discussion, and that if any such statements were made they were made in good faith without any malice toward the plaintiffs and in the discharge of the legal, moral

and patriotic duties of all such persons to ascertain the facts concerning such matters and were qualifiedly privileged statements. As to the second cause of action defendant denied that it ever published a separation notice, but that it was prepared to be used only as a part of its own confidential records and was filed away among its papers in order that the reason for plaintiffs' discharge might be preserved, and it did not show this separation notice to anyone nor deliver or send it to anyone, but that during the progress of an arbitration proceeding held some months after plaintiffs were discharged said notice was called for by the attorney then representing plaintiffs and at his request plaintiffs caused a photostatic copy of said notice to be made and attached to the complaints herein and thereby caused the same to be published, and defendant also alleged that the statements contained in the separation notice were true. It also alleged affirmatively that by statute in the State of Missouri it was made the duty of all employers of labor to keep records and to make report to the Unemployment Compensation Commission of Missouri but that said law specifically provided that any report or statement made by any employing unit to the Commission should be a privileged communication and that no person, firm, or corporation should be liable for slander or libel on account of such report.

At the close of the evidence introduced by plaintiffs, defendant moved to dismiss the actions upon the ground that upon the facts and the law plaintiffs had shown no right to relief because all the evidence showed that the charges alleged to have been made were true and that the undisputed evidence showed that all the statements made on the occasion or occasions in question by any of defendant's agents or officers were qualifiedly privileged and none of the evidence showed or tended to show express malice. The court sustained this motion and entered judgments of dismissal from which plaintiffs prosecute these appeals. They seek reversal on substantially the following grounds: (1) the court erred in sustaining defendant's motions to dismiss; (2) the court erred in excluding testimony of plaintiff Merkel as to what she understood by defendant's statements to her, the words being susceptible of a double meaning; (3) the court erred in excluding plaintiffs' Exhibit 5 for the reason that the exhibit reasonably tended to show the falsity of defendant's oral and written statements; (4) the court erred in excluding from the evidence the separation notices, being Exhibits 1 and 4.

We shall first consider the ruling of the court in sustaining defendant's motions to dismiss the actions. The court having sustained these motions to dismiss the actions, we must view the evidence in a light most favorable to plaintiffs. They are entitled to the benefit of all inferences that may reasonably be drawn from the evidence presented. Blue Valley Creamery Co. v. Consolidated Products Co., 8 Cir., 81 F.2d 182; Smith v. Russell, 8 Cir., 76 F.2d 91.

In considering the evidence it is important to have in mind that these actions are for damages for slander and libel. Much of the evidence bears upon the question as to whether the discharges of the plaintiffs were justified but we can not here concern ourselves with that issue. We shall therefore eliminate from consideration the testimony bearing upon the question as to whether or not plaintiffs were justly discharged.

At and for some time prior to the time of the occurrences here under consideration, plaintiffs were in the employ of the defendant at its plant in St. Louis, Missouri. Defendant was engaged in the production of a part of artillery shells for the United States Army, and plaintiffs were employed as inspectors on what was known as the A–2 Artillery fuse body. They were paid on a piece-work basis so that the more parts they inspected and passed the greater was their compensation. Accuracy in the work being essential, inspectors were assigned to certain benches in the production plant where the parts to be inspected were displayed as they were completed. Each part was required to be inspected both visually and by application of or to a gauge. Plaintiffs were not given a very clear idea of their duties except that they were to watch others perform similar du-

ties. On the night of February 20, 1945, they were summoned to defendant's executive offices, where in the presence of several officials of the defendant, including its attorney, they were separately subjected to interrogation. Later, on February 22, 1945, they were again subjected to similar examinations at which representatives of the Federal Bureau of Investigation and the United States Army were present. According to the testimony of plaintiff Eula Merkel, she had no training as an inspector when she went to work. She was put at a table and introduced to plaintiff Emmet Toal, who worked at the same table, and she was advised that Toal would show her what to do. The inspectors were told that as long as the bodies would fit on the gauge on another part of the table they should pass them. The foreman did not tell her that she was to use all the gauges at all times. On the occasion of her being called to the executive offices of defendant on February 20, she was introduced to the defendant's officials, Messrs. Ewart, Stempfle, Overby and Dorsey, the company attorney, and a court reporter. She had not been told why she had been brought into the room. Mr. Ewart asked her if she didn't know what her job was supposed to be and if she didn't know she was supposed to inspect the parts 100 per cent. She replied that she did but that nobody had ever told her that. Mr. Ewart asked, "Yes, but you do know you are supposed to gauge these parts 100 per cent?", to which she replied, "Nobody told me I should." She was then asked if her supervisors had never told her to inspect bodies 100 per cent, and she replied that they had not and that nobody had told her to do so. She further testified that on February 22, 1945, she attended a second meeting at which Messrs. Ewart, Peterson, Dorsey, and Stempfle were present, and a Mr. Main of the Federal Bureau of Investigation. Main asked her if she didn't know she was being paid for 9000 bodies and only inspecting a certain per cent. She told him that they had not passed anything she had not visually inspected 100 per cent. She identified Exhibit 1 as a separation notice which she received from defendant. Exhibit 1 contained the statement, "Dis-

charged for improper inspection of A–2 Artillery fuse body." This notice she received through the mail. It was offered in evidence but objected to by defendant as not admissible and the objection was sustained.

Plaintiff Toal testified that he became an inspector of A–2 fuse bodies in 1943 and at that time received instructions as to how the inspection should be done. Like plaintiff Merkel, he reported to the defendant's offices on February 20, 1945. Apparently the same officers were present as in the case of Mrs. Merkel. Mr. Ewart asked him if he inspected the bodies 100 per cent. He replied that on his gauge he inspected them 80 per cent, and 100 per cent visual inspection. He was then asked, "Mr. Toal, do you mean to say you passed 20 per cent of the bodies without inspection?", to which he replied, "No, I didn't think I was getting paid for something I didn't do because I inspected them 100 per cent visually." Mr. Ewart asked him if he knew other inspectors were not inspecting the fuse bodies 100 per cent. Mrs. Merkel was one of the other inspectors. On February 22, 1945, he was taken to the executive offices of defendant and introduced to Mr. Main of the Federal Bureau of Investigation, to Captain Hume of the United States Army, and to a court reporter. Defendant's officers were also present. Mr. Main did the questioning on that occasion and after some other questions asked, "You know you are being charged with sabotage and defrauding the government of money you didn't earn?", to which Toal replied no, he didn't feel that way. He identified Exhibit 4 as a separation notice, and testified that he had received it. It was offered in evidence but on objection was not received. On cross-examination he testified that at the conference on February 22, 1945, he had stated that he knew the fuse bodies were supposed to be gauge inspected 100 per cent and that he had not inspected every fuse body 100 per cent with the gauges but had inspected them 100 per cent visually.

After the second hearing both plaintiffs were told that they were discharged for improper inspection of A–2

fuse bodies. The foregoing, we believe, embodies all the language, oral or written, claimed to have been uttered by the defendant as defamatory. The trial court filed no opinion but we may assume that the court was of the view either that the spoken and written words were not defamatory, that they were true, or that they were qualifiedly privileged. The challenged words were brought out during an investigation into the conduct of plaintiffs who were employees of defendant. It is urged by plaintiff that the trial court, in reaching the conclusion that the actions should be dismissed, usurped the function of the jury by weighing the evidence. It was, of course, necessary for the court to consider the evidence for the purpose of determining whether or not there was any substantial proof to sustain plaintiffs' allegations, and manifestly, it was the view of the court that there was no substantial evidence. There was no conflict in the evidence and under the decisions of the Missouri appellate courts defendant was entitled to the benefit of the defense of qualified privilege. Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S.W. 100, 26 L.R.A.,N.S., 1080; Finley v. Steele, 159 Mo. 299, 60 S.W. 108, 52 L.R.A. 852; Garey v. Jackson, 197 Mo.App. 217, 193 S.W. 920; Gust v. Montgomery Ward & Co., 229 Mo.App. 371, 80 S.W.2d 286; Walgreen Co. v. Cochran, 8 Cir., 61 F.2d 357. In Holmes v. Royal Fraternal Union, supra, the court quoted with approval from Newell on Slander and Libel as follows [222 Mo. 556, 121 S.W. 106]:

" 'A privileged communication is an exception to the rule that every defamatory publication implies malice. A qualified privilege is extended to a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, either legal, moral, or social, if made to a person having a corresponding interest or duty; and the burden of proving the existence of malice is cast upon the person claiming to have been defamed.' "

The court further said:

"If in the judgment of the court the communication is a privileged one, then the burden of proof shifts to the plaintiff, and, in order to entitle him to recover, it is essential that he show actual or express malice, and if upon such showing there is no substantial evidence of the existence of actual or express malice, then it is the duty of the court to sustain the demurrer to the evidence."

In the case of Walgreen Co. v. Cochran, supra, which was a Missouri case, plaintiff was an employee of defendant which operated a number of retail drug stores in Kansas City. It was charged that the defendant's manager made statements which reflected upon plaintiff's honesty in the handling of funds which she collected for the store. In that case the defense of qualified privilege was not pleaded but the court held that it appeared from the evidence offered by plaintiff that the evidence gave rise to the privilege even though it had not been pleaded. After holding that the defense of privilege was properly invoked, the court, among other things, said [61 F.2d 359]:

"Consequently, in order for appellee to recover, the burden was upon appellee to show that appellant was actuated by express malice in making the statement. Massee v. Williams, 6 Cir., 207 F. 222. That is, it must be established that the person making the statement was actuated by motives of spite, ill will, or a malicious purpose to do an injury to the person about whom or to whom the words were spoken."

Again the court said:

"The fact that bystanders overheard the conversation does not destroy the privilege, particularly when there is no effort to give the matter publicity."

It was within the province of the trial court and it was its duty to determine whether, on the evidence presented, defendant was entitled to invoke the defense of qualified privilege and we are of the view that the court was correct in holding that the defense of qualified privilege was available. That being true, it was incumbent upon plaintiffs to prove actual or express malice. Lee v. W. E. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S.W.2d 45; Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291; Gust v.

Montgomery Ward & Co., supra; Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166. A very meticulous examination of the evidence fails to show any facts upon which a claim of actual or express malice can be predicated.

■ It is claimed by defendant that it was not responsible for anything said or done by Mr. Main of the Federal Bureau of Investigation because he was an employee of the United States Government in the discharge of a patriotic duty in the line of his employment. We need not determine this question because Mr. Main either represented the Government or the defendant, and in either event what he said was at least qualifiedly privileged.

■■ In view of our conclusion as to the insufficiency of the evidence we think the other questions raised are of slight importance. Mrs. Merkel attempted to testify as to what she understood to be 'the meaning of the question which had been asked her by Mr. Dorsey during the investigation of February 20, 1945, but Mr. Dorsey's question was not ambiguous. The question was whether she didn't know what her job was supposed to be and if she didn't know that she was supposed to inspect the parts 100 per cent, and she answered, "I did, but nobody ever told me that." She was also asked, "What did you understand by that question?", to which she replied, "Well, what I understood was that they were accusing me of * * *." An objection was interposed and sustained by the court, the court saying, "Tell what he said and not what you thought." The defamatory quality of written or spoken words is not dependent upon the understanding of the plaintiff or any particular hearer or reader, nor, indeed, upon the intention of the speaker or writer, but what in fact the words mean to a person of ordinary intelligence. We do not think the testimony was admissible, and certainly, in the state of the record its exclusion could not have been prejudicial error.

■ During the trial plaintiffs offered in evidence copy of the award of the American Arbitration Association. This award had to do with the discharge of a number of defendant's employees, including plaintiffs in these actions. This award was filed in a proceeding in which one man was selected by the union representing defendant's employees, one by the defendant, and a third by the American Arbitration Association. It appears that the latter arbitrator and the union representative voted to adopt the award and the defendant's representative voted against its adoption, thus making a majority of one for its adoption. This had no possible bearing upon the question of slander and libel. It went to the question as to whether or not certain employees had been improperly discharged. It was not a finding nor an adjudication of any questions involved in these actions.

■ The rejection of Exhibits 1 and 4, the separation notices, can scarcely be said to be material. Mrs. Merkel read into the record the only part of the notice claimed to be material, which simply recited that plaintiffs had been discharged for "improper inspection of A–2 Artillery fuse body." That was an admitted fact and it was true. The admission of this testimony could not possibly have affected the decision in these cases.

The judgments appealed from are therefore affirmed.