**Richard E. WILLIAMS, Appellant,**

v.

**KANSAS CITY TRANSIT, INC., a Corporation, Respondent.**

No. 47480.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Taylor & Jones, Robert J. Taylor, Russell S. Jones, Kansas City, for appellant.

Powell C. Groner, Kansas City, Hale Houts, J. D. James, Hogsett, Houts, James, Randall & Hogsett, Kansas City, for respondent.

BOHLING, Commissioner.

This is an action by Richard E. Williams. against the Kansas City Transit, Inc., (formerly Kansas City Public Service Company), a corporation, wherein plaintiff asks. $25,000 actual and $25,000 punitive damages. for an alleged libelous statement (§ 559.-410) by defendant of the cause of his discharge in a service letter, issued in compliance with plaintiff's request therefor, and for the alleged violation of § 290.140 by said. false statement in the service letter. (Statutory references are to RSMo 1949 and V. A.M.S.) Plaintiff appeals from a judgment entered upon a directed verdict at the close of his case.

Plaintiff worked for defendant as a streetcar and bus operator from December 15, 1942, until discharged on August 3, 1951, for not complying with defendant's rule with respect to the collection of fares, which provided, so far as material: "B. All fares will be deposited in farebox by the passenger except where governed by special order. Fares will not be deposited for passengers, unless they refuse to do so or are unable to reach fare box. In such case, operator will collect and insert fare in box in the presence of the passenger."

Other controversies arose out of plaintiff's discharge prior to this action.

Plaintiff was a member of Division 1287, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, which association had a contract with defendant. Under this contract the Union agreed to assist defendant in eliminating any practices of mishandling fares, and, subject to a hearing before a Grievance Board defendant had the exclusive right to discharge or discipline its employees for just cause. Plaintiff, through his Union, invoked the grievance provisions, of this contract. A hearing was had before a Grievance Board, composed of Loren Hargus, President of plaintiff's Union and the Union's appointee, G. H. Frieling, Vice-President of and defendant's appointee, and.

A. J. Granoff, selected as impartial chairman. The representatives of the Union and defendant agreed in writing that the following issue was for determination:

"This case presents the issue whether or not the Company was justified in discharging Mr. R. E. Williams for the alleged mishandling of fares which he collected as an operator of the Company. The Company contends that information provided it, including several checks made of the work of Mr. Williams between July 25, 1951, and August 1, 1951, gave reasonable grounds for belief that Mr. Williams was misappropriating fares belonging to the Company; and that, therefore, it was justified in discharging him from the service of the Company on August 3, 1951. The Union denies the contention of the Company and alleges that it was not justified in discharging Mr. Williams."

The record before us discloses that four of defendant's inspectors testified under oath at the grievance hearing and submitted reports for July 25, 27, 28, and 31, 1951. These reports were to the effect the inspectors observed that passengers on the bus operated by plaintiff handed money to plaintiff; that plaintiff, instead of handing the change to the passengers for depositing the fare in the fare box, handed the passenger the change, less the fare, and placed the fare on a transfer tray on the ledge or in his "changer." Plaintiff testified the fare box registers how much is taken in, like a cash register, and defendant advanced bus operators $18 for the changer, which did not have to be turned in, but never checked the changer.

The award of the majority of the Grievance Board, the Union member dissenting, on June 30, 1952, was that plaintiff had been discharged for just cause, sustained his discharge, and denied the grievance.

Next was an action by plaintiff against defendant for alleged wrongful discharge. This resulted in a final judgment on October 8, 1956, in favor of defendant. Williams

v. Kansas City Public Service Co., Mo., 294 S.W.2d 36.

The present action arises out of a service letter furnished plaintiff by defendant. It was filed September 15, 1954, and tried in January, 1959. No issue is presented respecting the pleadings and they are not developed.

On October 3, 1952, plaintiff wrote defendant requesting "a service letter disclosing the fact that I was discharged and the reasons for such discharge."

Defendant, under date of October 20, 1952, in separate paragraphs and so far as material, acknowledged plaintiff's request, set forth the nature and character of the services rendered by plaintiff and the duration thereof, stated the cause of plaintiff's discharge in the paragraph quoted below, called plaintiff's attention to the proceedings before the Grievance Board and the result thereof, and stated, with the exception mentioned, that plaintiff's services had been reasonably satisfactory.

The only paragraph of the service letter here involved reads:

"You were discharged for the following reason, to-wit, that investigations conducted by duly accredited representatives of the Company between July 25th and August 1, 1951, appeared to give it reasonable grounds for believing, and, on the basis thereof, the Company did believe, that you had mishandled fares which you collected as an operator of the Company, in that you had not required each fare to be deposited by the passenger in the fare box and registered, had not accounted to the Company for the fares received but not deposited in the farebox and had misappropriated the fares received belonging to the Company, not deposited in the fare box."

Plaintiff first contends the court erred in holding the quoted paragraph of defendant's service letter "was a qualifiedly privileged communication for the reason that under the law and the evidence appellant's proof

of the falsity of the statements overcame the defense of qualified privilege."

Plaintiff states the quoted paragraph falls within the statutory definition of libel, § 559.410, if the statements were false and not privileged, citing Lonergan v. Love, 235 Mo.App. 1066, 150 S.W.2d 534[2], and other cases. He, in his brief and in oral argument, stated the main, if not the only, issue is whether said statements are qualifiedly privileged communications.

■ "Briefly stated, a qualifiedly privileged communication is a defamatory communication made on what is called an occasion of privilege without actual malice, and as to such communications there is no civil liability." 53 C.J.S. Libel and Slander § 89, p. 144. A quoted and applied case is Finley v. Steele, 159 Mo. 299, 305, 60 S.W. 108, loc. cit. 109, 52 L.R.A. 852. It is there stated: " 'A libelous communication is regarded as privileged, if made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, if made to a person having a corresponding interest or duty, although it contains criminating matter which without this privilege would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.' [Quoting Byam v. Collins, 111 N.Y. 143, 19 N.E. 75, 2 L.R.A. 129. And:] 'The proper meaning of a privileged communication is said to be this: that the occasion on which it was made rebuts the inference arising prima facie from a statement prejudicial to the character of the plaintiff, and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill will, independent of the circumstances in which the communication was made.' [Quoting Klinck v. Colby, 46 N.Y. 427.] But when the paper published is a privileged communication an additional burden of proof is put upon the plaintiff, and he must show the existence of express malice." See, among others, Holmes v.

Royal Fraternal Union, 222 Mo. 556, 121 S.W. 100, 104, 106, 26 L.R.A.,N.S., 1080; Lee v. W. E. Fuetterer Battery & Supplies Co., 332 Mo. 1204, 23 S.W.2d 45, 60 et seq., Gust v. Montgomery Ward & Co., 229 Mo. App. 371, 80 S.W.2d 286 [6–8, 14–16]; 33 Am.Jur. 124, § 126.

■ Section 290.140 makes it the duty of a corporation upon the written request of a former employee to, so far as material here, "issue to such employee a letter * * * truly stating for what cause, if any, such employee has quit such service." Thus, a legal duty was imposed upon defendant to issue the communication here involved on plaintiff's written request. Under the above authorities said service letter was a qualifiedly privileged communication. See also, among others, Merkel v. Carter Carburetor Corp., 8 Cir., 175 F.2d 323[3–5]; Jorgensen v. Pennsylvania R. Co., 25 N.J. 541, 138 A.2d 24, 36[8–15], 72 A.L.R.2d 1415; Mick v. American Dental Ass'n, 49 N.J.Super. 262, 139 A.2d 570, 577[6–8, 19]; Murphy v. Johns-Manville Products Corp., 45 N.J. Super. 478, 133 A.2d 34, 40[6, 12]; Childs v. Erhard, 226 Mass. 454, 115 N.E. 924, 926; Hoff v. Pure Oil Co., 147 Minn. 195, 179 N.W. 891, 11 A.L.R. 1010; Schlaf v. State Farm Mut. Auto. Ins. Co., 15 Ill.App.2d 194, 145 N.E.2d 791, 793[1–3]; Annotation, 66 A.L.R. 1499.

Plaintiff asserts in his brief that the only evidence presented was that the statements here involved were untrue and that he did not mishandle or misappropriate $2.80 of defendant's fares.

Omitting the first part of the paragraph here involved (reading: "You were discharged for the following reason, to-wit, that investigations conducted by duly accredited representatives of the Company between July 25th and August 1, 1951, appeared to give it reasonable grounds for believing, and, on the basis thereof, the Company did believe,") plaintiff's petition charged that defendant caused the following "defamatory matter concerning plaintiff to be published, to-wit: ' * * * that you [re-

ferring to plaintiff] had mishandled fares which you collected as an operator of the Company, in that you [referring to plaintiff] had not required each fare to be deposited by the passenger in the fare box and registered, had not accounted to the Company for the fares received but not deposited in the fare box and had misappropriated the fares received belonging to the Company, not deposited in the fare box.'"

 Truth is a defense to libel; and recourse to the defense of qualified privilege, available in appropriate circumstances for the justification of untrue statements, is not a necessary element of a defense where only true facts are stated. Cook v. Pulitzer Pub. Co., 241 Mo. 326, 359, 145 S. W. 480, 490[17]; Warren v. Pulitzer Pub. Co., 336 Mo. 184, 78 S.W.2d 404, 412.

 "A writing claimed to be libelous must be interpreted from its four corners." Jacobs v. Transcontinental & W. Air, 358 Mo. 674, 216 S.W.2d 523, 525[4], 6 A.L.R. 2d 1002; Lorenz v. Towntalk Pub. Co., Mo., 261 S.W.2d 952, 954[4].

Under said deletion plaintiff in his petition and in his brief would construe the paragraph as if defendant discharged him because he in fact had mishandled and misappropriated fares. However, the paragraph, read as a whole, does not state that plaintiff mishandled and misappropriated fares as a fact, but that investigations conducted by representatives of the Company "appeared to give it reasonable grounds for believing, and, on the basis thereof, the Company did believe" that plaintiff had mishandled and misappropriated fares.

Plaintiff's counsel read the whole of the paragraph to and asked plaintiff to "tell the court and jury whether or not that is false or true?" Plaintiff answered: "That is false." Plaintiff, upon cross-examination, thereafter explained and admitted that what he meant was that he had not actually mishandled or misappropriated defendant's fares.

"Q. You are saying that you didn't mishandle fares? A. That's right. * * *

"Q. But it is not untrue that the company believed you mishandled fares? Right? A. That is what they say in that letter. * * *

"Q. Do you say the company lied when they said they believed it to be true? Regardless of whether it is true, this statement of the company that they thought you were mishandling fares, that they believed, on the basis of these investigations, that you were mishandling fares, are you telling the court and jury that the company did not believe any such thing? A. They must have believed it or they wouldn't have wrote it, but it is not true.

"Q. It is not true that you did misappropriate fares? A. It is not true; no, sir.

"Q. I understand, but you do concede they must have thought that when they said it in the letter? A. Yes."

Mr. Hargus, plaintiff's other witness on the issue, testified he had no knowledge that defendant did not believe the statement in the service letter.

 Plaintiff's request for his service letter came over a year after plaintiff's discharge on August 3, 1951, over three months after the majority of the Grievance Board ruled he had been discharged for just cause and denied his grievance, and more than a year after he had been regularly engaged in other employment. Plaintiff's witness Hargus, President of the Union, testified he assisted plaintiff in drafting this request. Hargus was the dissenting member of the Grievance Board. Plaintiff admitted he was "not in the dark" but knew the reason for his discharge when he made his request for the service letter. He also testified he did not "have any idea what the company would put in that letter." "[I]f a discharged employee demands a service letter, then 'truth must out', and the employee can accept the consequences." Van Sickle v. Katz Drug Co., 235 Mo.App. 952, 151 S.W.2d 489, 494[4].

 "When we say that a plaintiff is entitled to a favorable view of the whole evi-

dence, we do not mean that material facts testified to by plaintiff may be ignored. A plaintiff is bound by his own testimony." Brooks v. Stewart, Mo., 335 S.W.2d 104, 110[4]. Taylor v. Vestal, Mo., 304 S.W.2d 820, 823[1, 2].

■■ Plaintiff's construction would ignore the introductory portion of the paragraph involved, which modified the whole thereof; and we conclude that plaintiff's said construction is a forced and unfair construction, and that there is no substantial evidence of record that said paragraph, when considered as a whole, is false.

Plaintiff's cases of Warren v. Pulitzer Publishing Co., 336 Mo. 184, 78 S.W.2d 404, 412 (stating "[S]ince there is no right to knowingly spread false facts about any one, there can be no question of privilege to do that"); Moritz v. Kansas City Star Co., 364 Mo. 32, 258 S.W.2d 583, 585, and Coots v. Payton, 365 Mo. 180, 280 S.W.2d 47, 52, involved alleged defamatory statements in newspaper articles. "Liberty of the press is not license, and newspapers have no privilege to publish falsehoods, or to defame under the guise of giving the news. It is held the press occupies no better position than private persons publishing the same matter, that it is subject to the law and, if it defames, it must answer for it." Cooley, Torts, 4th Ed., 562, 563, § 160. 53 C.J.S. Libel and Slander § 121, p. 197; 39 Am.Jur. 18, § 29; State ex inf. Crow v. Shepherd, 177 Mo. 205, 253, 76 S.W. 79, 94. Plaintiff's cases, as we read them, differ from this case in that, among other things: Here there was no labeling of mishandling or misappropriation of fares as an actual fact by defendant. Plaintiff admitted defendant must have believed the statements when the letter was written. There was no evidence that defendant did not believe the statements in the service letter. Defendant's statements were made in response to a legal demand by plaintiff for the service letter. The plaintiffs made no like demand upon the defendants in plaintiff's cases, and the publishers in said cases went beyond the

qualified privilege asserted by them. In plaintiff's case of Mock v. American Ry. Exp. Co., Mo., 296 S.W. 855, 858, 859, defendant's agent's testimony was to the effect he did not believe his accusation against plaintiff to be true at the time he made it. Plaintiff's authorities do not establish the asserted error.

Plaintiff's next point reads: "The court erred in ruling as a matter of law that appellant failed to show actual malice on the part of respondent for the reason that the existence of actual malice was a question of fact to be determined by the jury." He states "the falsity of the defamation may be shown to *prove* the malice charged," and stresses Jacobs v. Transcontinental & W. Air, Mo.App., 205 S.W.2d 887, 894 [2], as holding even in qualifiedly privileged defamations the existence or nonexistence of malice "should be submitted to the jury to determine." The Jacobs case cites Sullivan v. Strahorn-Hutton-Evans Commission Co., 152 Mo. 268, 279, 53 S.W. 912, 915, 47 L.R.A. 859, a case which did not involve a qualifiedly privileged communication. Furthermore, the opinion in the Jacobs case was quashed and plaintiff's verdict reversed outright on another ground upon transfer here at 358 Mo. 674, 216 S.W.2d 523, 6 A.L.R.2d 1002. Plaintiff's case of Conrad v. Allis-Chalmers Mfg. Co., 228 Mo.App. 817, 73 S.W.2d 438, 446 [11, 12], differs in that the publisher knew the statements were false at the time they were published; and Delcour v. Wilson, 241 Mo.App. 951, 245 S.W. 2d 467, 470, differs in that the statements involved were recklessly made by the defendant.

We do not enter upon a discussion of the two senses in which "malice" is used in the law of libel and slander. The interested may find the distinctions between "legal malice," "constructive malice," "malice in law" or "implied malice" and "actual malice," "express malice" or "malice in fact" discussed at 53 C.J.S. Libel and Slander § 2, p. 35; 54 C.J.S. p. 912 et seq.; 33 Am.Jur. 113, § 111; 34 Am.Jur. 681, §§ 2, 3.

■ It is stated in Finley v. Steele, supra, with respect to qualifiedly privileged communications that "an additional burden of proof is put upon the plaintiff, and he must show the existence of express malice" (159 Mo. loc. cit. 305, 60 S.W. loc. cit. 109); and it is also there stated: "'Malice in such case is not shown by the mere fact of the falsity of the publication.'" See, among others, the Holmes 121 S.W. loc. cit. 104, 106, and Lee (23 S.W.2d loc. cit. 60 [14, 16]), cases, supra; Merkel v. Carter Carburetor Corp., 8 Cir., 175 F.2d 323, 327, citing additional authority. This record discloses that plaintiff admitted defendant must have believed the statements involved or they would not have been made. We find no substantial evidence of actual malice in the record, and this is an additional reason for sustaining the court's action on the libel phase of the case.

■ Plaintiff's last point is that the court erred in holding the service letter complied with § 290.140 "for the reason the same was a question of fact to be determined by the jury," stating: "It is well settled that the question whether or not the service letter complies is for the jury." Plaintiff's argument proceeds on the theory all like actions are for the jury. The first three cases cited by plaintiff are Bourne v. Pratt & W. Aircraft Corp., Mo.App., 207 S.W.2d 533, 540; Gerharter v. Mitchellhill Seed Co., Mo.App., 157 S.W.2d 577, 581, and Walker v. St. Joseph Belt Ry. Co., Mo.App., 102 S.W.2d 718, 724[3]. In the Bourne and Gerharter cases there was evidence to establish that the cause of plaintiff's discharge stated in the service letter was not the true reason therefor. In the Walker case the service letter did not comply with § 290.140 in several respects, including, as we read the case, the failure to state any reason for plaintiff's discharge. The other authorities cited by plaintiff do not aid him. The Bourne case, stressed by plaintiff, states: "In view of all the evidence, we are of opinion that the defendant was not entitled to a directed verdict and so rule"; refuting the broadly stated reason for error in plaintiff's point. We have hereinbefore considered that there was no substantial probative evidence that the reason stated in the service letter for plaintiff's discharge is false. We do not develop other grounds advanced by defendant for sustaining this ruling of the trial court. We hold plaintiff has not met his burden as an appellant of establishing error.

Defendant filed a motion to dismiss plaintiff's appeal for failure to comply with our rules. Let it stand overruled without prejudice.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.