C. E. GAREY, Respondent, v. C. M. JACKSON, Appellant.

St. Louis Court of Appeals, April 3, 1917.

1. **LIBEL AND SLANDER:** Qualified Privilege. Before the defense of qualified privilege is available, in an action for slander, it must appear that the statements were made in the discharge of some duty that actually exists, not one that defendant merely honestly believes to exist, either a public or private or a legal, moral or social duty, to a person or persons having a corresponding interest or duty, and that the words were spoken in connection with and

were relevant and germane to some matter involving, and for the protection of, such .interest and duty, and, in addition, they must have been spoken in good faith, on a proper occasion, based upon probable cause, and in the honest belief that they are true.

2. ———: ———. In determining whether a defense of qualified privilege is tenable, in an action for slander, the court should consider the surrounding circumstances as they appeared to defendant at the time of the utterance of the words charged to be slanderous.

3. ———: ———. Statements made by defendant, the president of a students' co-operative store corporation, to an assemblage of students who constituted the body corporate and had a financial and moral interest in the continuance of the store, at a time when the existence of the store was threatened by the competition of plaintiff, as to the method used by plaintiff in taking the trade of the students from the store, and as to an unfair advantage he had taken regarding a certain purchase of second-hand books for a rival store organized by him, at a time when he was the manager of the co-operative store, were qualifiedly privileged within the law of slander.

4. ———: ———: Malice: Sufficiency of Evidence. In an action for slander for making such statements, held that plaintiff failed to successfully carry the necessary burden of showing malice on the part of defendant in making them, and hence he was not entitled to recover; held, further, that such statements were, in substance, true.

5. ———: ———: Malice: Burden of Proof. Where, in an action for slander, the words charged to be slanderous are qualifiedly privileged, the burden is cast on the plaintiff to prove that they were actuated by express or actual malice.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED.

*E. W. Hinton* and *McBaine & Clark* for appellant.

(1) The court should have sustained the defendant's objection to the introduction of any evidence under the petition because it failed to state facts sufficient to constitute a cause of action, in this: (a) The bare words set out in the petition, viz., "That about two years ago, etc., Mr. Garey resigned his position and opened up

a rival store, taking with him a quantity of second hand books,'' without other facts by way of inducement or colloquium do not support the innuendo of larceny or any other indictable offense.   Bundy v. Hart, 46 Mo. 460; Christal v. Craig, 80 Mo. 347; Powell v. Crawford, 107 Mo. 595; Flowers v. Smith, 214 Mo. 134; Diener v. Star Pub. Co., 230 Mo. 613; Diener v. Pub. Co., 232 Mo. 416; Cook v. Pub. Co., 241 Mo. 326-343; Furlong v. German American Press Ass'n (Mo. Sup. Ct.), 189 S. W. 385; Brettun v. Anthony, 103 Mass. 37; Adams v. Stone, 131 Mass. 433.   (b) The balance of the words alleged in the complaint imputing to Garey an intention of carrying on commercial war with the co-operative store and driving it out of busniess, and charging that he was an unscrupulous enemy of the co-operative store, do not support the innuendo that plaintiff was unscrupulous in his trade or business.   Cole v. Neustadter, 22 Oregon 191, 29 Pac. 550; Legg v. Dunleavy, 80 Mo. 558; Van Tassel v. Capron, 1 Denio (N. Y.) 250; Achorn v. Piper, 66 Ia. 694, 24 N. W. 516; Lumby v. Allday, 1 C. & J. (Eng.) 301; Miller v. David, L. R. A. 9 C. P. 118; Willis v. Mfg. Co., 81 N. Y. App. Div. 591, 81 N. Y. Supp. 359; Walsh v. Pulitzer, 250 Mo. 142; Bank v. Goodwin, 167 Mo. App. 211, l. c. 216. (2)   There was a total failure to prove any state of facts or circumstances to enlarge the meaning of the language used, and hence the court should have sustained defendant's demurrers to the evidence, because in that event the construction of the words was exclusively for the court, the same as on demurrer.   Rex v. Burdett, 4 B. & Ald., 95-131; Bank v. Henty, L. R. 7 App. Cases, 741; Com. v. Anthes, 5 Gray 185; Diener v. Publishing Co., 230 Mo. 613; Cook v. Publishing Co., 241 Mo. 326.   (3)   It was error to admit evidence that certain persons in the audience understood the words to impute larceny, because the words were not ambiguous and did not naturally or fairly impute an offence, and the defendant is not responsible for a forced and unnatural meaning which a particular individual might give to the words, but only for the fair

and natural meaning, which is to be determined by the court. Branch v. Knapp, 222 Mo. 580; Diener v. Pub. Co., 230 Mo. loc. 628; Everhart v. Bryson, 244 Mo. 507, 519. (4) The first instruction for the plaintiff was erroneous in leaving the jury to find an imputation of larceny in any of the words set out in the petition; when the greater part of the words could not by any possibility even refer to the book transaction on which the supposed charge of larceny is based. Coal Co. v. Davis, 138 Ky. 667; Atterberry v. Pound, 29 Mo. 429; Ogle v. Sidwell, 167 Mo. App. 292; Parsons v. Henry, 177 Mo. App. 329. (5) The fourth instruction for the plaintiff was erroneous in telling the jury that it was actionable to charge a man with being unscrupulous in his trade or business, and leaving them to find such an imputation in any of the words proved. (a) Because it was broader than the innuendo. (b) Because there was a failure to prove the only inducement alleged, viz. that the plaintiff was the owner and proprietor of the Missouri store, since it was admitted that this concern was a corporation, and that the plaintiff was only one of the stockholders. It is elementary that the inducement, being material, must be proved as laid. Harris v. Burley, 8 N. H. 217. (c) Because the jury were thus given a roving commission to find this imputation in any of the words proved, whether they could reasonably bear such a construction or not. Coal Co. v. Davis, 138 Ky. 667, and authorities under Point IV. (6) The court erred in not holding as a matter of law that the occasion was one of qualified privilege, and in overruling defendant's demurrer to the evidence for failure to prove any actual malice so as to destroy such privilege. Finley v. Steele, 159 Mo. 299; Holmes v. Fraternal Ass'n. 222 Mo. 556. (7) The court erred in refusing the defendant's fifth instruction, and in so modifying it as to eliminate the defense of privilege and submit the question to the jury as to how the hearers understood the words. Joannes v. Bennett, 5 Allen, 169; Finley v. Steele, 159 Mo. 299; Holmes v. Fraternal Ass'n, 222 Mo. 556. (8) Plain-

tiff's Instruction 9 is erroneous. This instruction covered the question of compensatory and punitive damages. It misdirected the jury as to punitive damages as (a) it did not advise them that they might in their discretion award punitive damages if they found the words used were maliciously spoken, and ignored the evidence that the words were spoken in good faith; (b) because said instruction impliedly allowed double damages as it told the jury in determining the amount of exemplary damages they might take into consideration "the extent of the injury done plaintiff." Callahan v. Ingram, 122 Mo. 355; Ickenroth v. Transit Co., 102 Mo. App. 597. (9) It was error to admit evidence on the part of the plaintiff that the plaintiff's reputation for honesty and fair dealing was good, in the absence of any attack on the plaintiff's character or reputation. Cooper v. Phipps, 24 Oregon 357, 33 Pac. 985; Odgers on Libel and Slander (5 Ed.), p. 391 and 686; Townsend on Slander and Libel (4 Ed.), p. 645; Newell on Slander and Libel (2 Ed.), p. 771; 1 Wigmore on Evidence, sec. 76.

*J. L. Stephens, E. S. Gantt, Fauntleroy, Cullen & Hay* for respondent.

BECKER, J.—This is an action for slander, brought by C. E. Garey, plaintiff below, in the circuit court of Boone county, against C. M. Jackson, defendant below. After a trial, resulting in a hung jury, the venue was changed by consent to the circuit court of Audrain county, where, upon a hearing of the case, judgment was rendered in favor of plaintiff and against defendant in the sum of $1000 actual damages and $1250 punitive damages, from which judgment defendant appeals.

We think it necessary for a proper understanding of the case that we quote the inducement or colloquium, the false and defamatory words alleged to have been spoken, and the innuendo set out in plaintiff's amended petition.

''Plaintiff for his amended petition herein, leave of court being first had and obtained to file the same, states that the defendant is now and was at all the times hereinafter mentioned, dean of the medical department of the Missouri state university, and was on the 6th day of December, 1910, chairman of the board of directors of the book, stationery and supply store operated at the said state university, and known as the ''university co-operative store;' that plaintiff, on the said 6th day of December, 1910, and for some time prior thereto, owned and operated what is known as the 'Missouri store' situated near the state university campus on South Ninth street in the city of Columbia, Missouri, and was engaged in the book, stationery and student supply business; that on the said 6th day of December, 1910, at a public meeting held in the auditorium of the main building of said university the defendant, in the presence and hearing of a public assembly of persons then and there assembled, gave public utterance to certain wanton, false, defamatory, malicious and slanderous words and language of and concerning plaintiff and his methods of business as proprietor and manager of the Missouri store aforesaid, and as a competitor of the said co-operative store, as follows, to-wit:

'' 'That about two years ago in the Summer when the students were away, Mr. Garey (meaning this plaintiff), who was then manager of the students' co-operative store (meaning the store run and operated by plaintiff), which was conducted for and owned by the university body, resigned his position and opened up a rival-store, (meaning the Missouri store) taking with him (meaning plaintiff) a quantity of second-hand books (meaning then and there and intending to charge, and charging plaintiff with the offense and crime of unlawfully taking, stealing and carrying away said books and thus guilty of the charge and offense of theft or larceny) he, Garey (meaning the plaintiff), deserted the cause of the students and expressed a determination to put the co-operative store out of business altogether, but Mr. Maddox after a short

time was persuaded to take the management of the co-operative store; that Mr. Maddox with all his faults is human, but he is certainly not the sort of man to desert the students' interest and go over and start an opposing store and attempt to injure the interests of the students in every way possible (meaning and referring to and condemning the action of plaintiff in leaving the co-operative store, in order to infuriate and prejudice the faculty and students against plaintiff and to injure him in his business). That it was made clear to the board that under the plan of issuing stock broadcast some unscrupulous person (meaning this plaintiff and that said plaintiff was unscrupulous in his trade or business in running and operating the Missouri store) might buy enough of the available stock to secure a controlling interest in the business and in that way injure the interest of the students. As a matter of fact, there was in reality an attempt of that sort made (meaning that this plaintiff had made that sort of an attempt). That we (meaning the defendant) thought the Missouri store (meaning the plaintiff) ought to be satisfied with the profits to be gotten out of the cafe and confectionery business. The Missouri store (meaning plaintiff) has not been satisfied and they (meaning the plaintiff) insist on war. Mr. Garey (meaning plaintiff) said to me in the presence of witnesses not less than two weeks ago, that it was still his determination to put the co-operative store out of business. Now what is he (meaning plaintiff) so anxious to put the co-operative store out of business for? Here is a man (meaning plaintiff) asking for your patronage (meaning the patronage of the faculty and students) and at the same time trying to put you (meaning the faculty and students) out of business. This is the most colossal piece of nerve I ever heard of anywhere. I want to know whether we (meaning the faculty and students) shall surrender or whether we shall fight. In so far as I am concerned (meaning the defendant) if they (meaning plaintiff) want war, they (meaning plaintiff)

shall have it. I (meaning defendant) should like to see every student in the university come out and take a stand for one side or the other in this fight. The bullets that you (meaning the faculty and students) fire are your dollars, and every dollar that you (meaning the faculty and students) spend in the co-operative store means that much towards its support. And every dollar you spend with its enemies (meaning plaintiff) means that much against the co-operative store. Nearly one-third of the students bought books this semester at the Missouri store (meaning from this plaintiff). If you (meaning the faculty and students) do not like the co-operative store or its management, do not go to its competitors and enemies (meaning plaintiff) and ask them (meaning plaintiff) about it. The co-operative store has a shrewd and unscrupulous enemy (meaning plaintiff, and that plaintiff was shrewd and unscrupulous in his business of running and operating the Missouri store and as a competitor of the co-operative store). Bear this in mind.'

"Plaintiff states that by the use and public utterance of the language set out as aforesaid, defendant falsely, wantonly, and maliciously intended to impute to and charge and did impute to and charge plaintiff with the crime of larceny or theft, and was so understood by the use of said words to charge plaintiff, by the persons who heard him use the same; and did thereby wantonly, falsely and maliciously impute to and charge plaintiff, and was by the persons who heard him, understood to impute to and charge plaintiff with having stolen a quantity of second-hand books from the co-operative store, and that said charge was so made for the purpose of injuring the character and reputation of this plaintiff and his business, and for the willful purpose of completely destroying plaintiff's business. And plaintiff further states that, by the use and public utterance of the language set out as aforesaid, defendant, in addition to the charge of theft or larceny, as aforesaid, falsely, wantonly and maliciously intended to impute to and charge and did impute to and charge plaintiff with being unscrupulous in his trade or

business, and particularly in his running and operating the Missouri Store, and that defendant was so understood to charge plaintiff by the persons who heard him utter said words.''

The defendant's answer sets out the following defenses:

First, a general denial; second, that the words were true in the sense that the plaintiff had taken advantage of his position as manager of the co-operative store to purchase second-hand books for its rival and competitor, the Missouri store; third, that the statements were made in good faith at a business meeting of the students financially interested in the co-operative store and its business.

The reply was a general denial.

The defendant, at the opening of the trial, interposed an oral demurrer to the petition in the form of an objection to the introduction of any testimony. This objection was overruled. Again at the close of the plaintiff's case, as well as at the close of all the evidence, the defendant requested that a peremptory instruction be given the jury by the court, that the verdict must be for the defendant, which request was refused in each instance, and proper exceptions were saved to the ruling of the court.

The record discloses that there was little conflicting testimony as to the facts in the case.

We find that the appellant's statement of facts is concise, complete and fair and we quote certain portions thereof herein.

''That some ten years before a co-operative store was organized at the university for the purpose of selling to students text books and other student supplies at low prices. This concern was incorporated as the university co-operative store, with a capital stock of $2000, divided into shares of one dollar each, which were sold to the students. The plaintiff, Garey, was employed as the business manager of this concern, and managed it quite successfully for a number of years. After a time, the original shareholders graduated or left school, and became so scattered that it was becoming difficult to keep up the organization. Garey himself suggested a further danger that

197 M. A.—15

some enterprising individual might buy enough of this scattered stock to obtain control, and thus run the business for profit instead of on a co-operative basis. Accordingly a plan was devised and carried out of getting the stock assigned to trustees for the benefit of the body of students; that directors, consisting in part of students and in part of faculty members, were nominated each year by a mass meeting of the students, and formally elected by the trustees holding the stock. The store did a large annual business, but was not operated for profit. In the early part of 1909, the management of the business had been criticized by some of the student publications and the solvency of the concern questioned. The board of directors accordingly called on Garey for a full financial statement, and at the same time temporarily stopped the purchase of books, etc., until the condition of the store could be determined. In a short time the financial condition was found satisfactory and the business continued as usual. Garey claimed that he had no notice to go ahead with purchases but admits that he did make quite a number of purchases of goods as they were needed after this time.

"About the same time in the early Spring of 1909, the board decided to change Garey's compensation from a commission to a salary basis, and were negotiating with him on this subject for the next year. Whether Garey took offense at this action of the board, or merely desired to start in business for himself is not clear. At any rate, in the early Spring of 1909, he quietly began the organization of a new corporation to deal in books and student supplies.

"It had been the practice at the close of each school year for the management of the store, in connection with a firm of second-hand book dealers, to advertise to buy the books which the students had just used. In this way the store obtained what second-hand books it needed for the next year and any surplus was taken by the second-hand dealer.

"At the end of May, 1909, Garey had the usual notice published that the co-operative store would buy sec-

ond-hand books, and the board of directors took it for. granted that he would secure a supply for that store as usual.

"Garey bought no books for the co-operative store; but did at this sale secure a supply for the new concern which he was then secretly organizing. There is some controversy as to the amount of the books thus obtained, but none as to the fact that he secured several hundred for himself, and none for the co-operative store.

"These details appear to be necessary in order to understand the subsequent controversy.

"About the last of June, Garey resigned his position as manager, and soon completed the organization of a new corporation, known as the Missouri store company, in which he and some four or five others became the first stockholders. When a new manager was secured for the co-operative store, he discovered the fact that Garey had not renewed its stock of second-hand books, but had cornered the supply for the new store. During the Fall of 1909 and the Spring of 1910, there was a sharp fight on between the old and new concern. The plantiff Garey gives the following account of this period in his cross-examination:

" 'Well our price was cut the lower; we cut prices. Q. You cut prices and had a commercial war that year? A. You may call it that. Q. You were trying. if you possibly could to take all the business away from them and force them out of business? A. I would have done so if I could. Q. Each one was making its boast that it was going to' bust the other—that's a fact, isn't, it? A. Yes, sir, I expect it is.'

"This was the state of affairs between the business managements of the two store companies when a meeting of students was held at the university on December 6, 1910, to nominate a new board of directors for the co-operative store. The defendant, as chairman of the old board, presided at the meeting, and as a preliminary to the nomination of directors, made a fifteen or twenty minute talk, in which he explained the origin and organization of the co-operative store; the interest of the stu-

dents in it; Garey's former connection and his present hostility. The language complained of was used in this speech. Garey had his stenographer (a student who did stenographic work) to report the proceedings. The stenographer reported the proceedings, and Garey sent a copy of the speech thus reported to the defendant.''

According to this stenographic report, which is admitted to be substantially correct, the defendant made the statements set forth in plaintiff's amended petition, with, however, one important additional statement which the stenographic report shows the defendant to have made in connection with the reference to taking the second-hand books for the Missouri store, which statement does not appear in plaintiff's petition. We quote these additional words, in italics, in connection with the paragraph in which they belong, as found in the stenographic report.

''Said it was a matter of common knowledge that about two years ago, during the Summer, when the students were away, Mr. Garey, who was then manager of the co-operative store, resigned his position and opened up a rival store, taking with him a quantity of second-hand books, *but whether he took them in a proper manner he could not say;* or, in other words, he (Garey) deserted the cause of the students and expressed a determination to put the co-operative store out of business. . . . The co-operative store is a public institution. Do not criticize its managements, its goods, etc., but if you are not satisfied with its directors, its management or its manager, say so, and elect new ones, . . . The co-operative store has a shrewd and unscrupulous enemy.''

Plaintiff was permitted to show by his stenographer and his business associate Orr, that they understood the words to charge plaintiff with stealing. All the other witnesses simply understood the language to mean that there was some dispute about the books and that the speaker did not think Garey had a right to them.

The defendant frankly admitted using substantially the language reported by the stenographer but dis-

claimed any intention of charging the plaintiff with larceny.

We will first take up the question as to whether or not the statements complained of in plaintiff's petition, and upon which this action is founded can be held to have been qualifiedly privileged communication.

It is the law in this State that before the defense of qualified privilege is available it must appear that the statements made by the defendant were made in the discharge of some duty, either public or private, either legal, moral or social, to a person or persons having a corresponding interest or duty, and were spoken in connection with and were relevant and germane to some matter involving such an interest or duty, and that the words were spoken in the interest of or for the protection thereof. In addition they must have been uttered in good faith and spoken on a proper occasion, from a proper motive and based upon a probable cause, and in the honest belief that such statements were true. The duty or interest on which the privilege is founded must actually exist, and it is not sufficient that the defendant honestly believes that such duty or interest exists. It is the surrounding circumstances as they appeared to the defendant at the time of the utterance of the words that the court considers in determining the question of privilege. [Odgers on Libel and Slander (4 Ed.), p. 234; Newell, Slander and Libel (3 Ed.), p. 575; Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S. W. 100.]

The statements complained of were spoken by the president of a co-operative store at an annual meeting of the members thereof, which membership was made up of the students of the university of the State of Missouri. Each of the students present at the meeting had a pecuniary as well as a moral interest in the welfare of the said co-operative store. For a year or more prior to the meeting there had been a keen rivalry between the Missouri store of which the plaintiff was manager, and the co-operative store, and the plaintiff had openly stated that he would, if possible, put the co-

operative store out of business. At the time of this particular meeting the very existence of the co-operative store was threatened; the situation required that every legitimate step be taken to strengthen the loyalty and assistance of the student body.

Did not the defendant, as the president of the company and one of the trustees, owe a duty to the students who made up the body corporate, to explain the condtion of its affairs? Was it not his duty to explain to them the necessity and the need for a joint and united effort on the part of all the students to stand by the organization of the company in which they were all directly interested? And was it not defendant's duty in this connection as president of the company to fully explain the methods used by their competitor in taking the trade of the students from the co-operative store, and to tell them of the unfair advantage that plaintiff had taken of the situation regarding the annual purchase of second-hand books? We feel defendant, as president of the company, clearly owed such a duty to the student body comprising the membership of the co-operative store, and we hold that in the instant case the statements of defendant complained of were made under circumstances which make the same a qualifiedly privileged communication and should have been so treated by the trial court.

Second: Holding as we do that the statements complained of in plaintiff's petition were a qualifiedly privileged communication, we next come to the question, what burden, if any, is thereby cast on plaintiff.

"The proper meaning of a privileged communication is said to be this: That the occasion on which it was made, rebuts the utterance arising, prima-facie, from a statement prejudicial to the character of the plaintiff; and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill will, independent of the circumstances in which the communication was made." [Finley v. Steele, 159 Mo. 299, 60 S. W. 108; Holmes v. Royal Fraternal Union, supra.]

In other words, the burden is thereby cast upon the plaintiff to prove that the statements complained of were actuated by express or actual malice. Did, therefore, the plaintiff, by some substantial evidence, show the existence of actual or express malice? We have read the evidence developed upon the trial of this cause with great care, and taking all the testimony adduced by the plaintiff, and considering it from every possible angle, we must hold that the plaintiff falls far short from showing malice on the part of the defendant in making the statements set forth in plaintiff's petition.

We must remember that the defendant could not have been actuated by any monetary consideration or any motive of personal gain. Further, he was the dean of the medical school of the university and had been chosen by the student body as one of the directors and trustees, and he was the president of the company. The record shows the defendant at no time had any personal disagreement with the plaintiff; in point of fact defendant offered to retain plaintiff as manager of the company at the very time when plaintiff had already entered into negotiations to form a separate company in opposition to and in competion with the co-operative store, and of which he was to become the manager. The defendant, as the president of the co-operative store, was determined to imbue the students, for whose benefit the company was being run, with its need of their loyalty and co-operation. It was but natural that he would review the history of the business for the previous year or more and would explain the keen competition that had arisen out of the fact that the plaintiff had opened up a competing store, and in this connection to explain how plaintiff had obtained a considerable advantage over the co-operative store in competition for the business of the fall and winter of 1909, just after the plaintiff had opened his store; and so to tell them that the plaintiff, while, and though still manager of the co-operative store, had purchased the second-hand books for the new rival store and not for the co-operative store, contrary to the custom in each of the previous years, and this too with-

out imparing the knowledge thereof to the board of directors. And he merely stated a fact when he said plaintiff "had taken with him a quantity of second-hand books, but whether he took the books in a proper manner he could not say." The plaintiff had announced his intention of putting the co-operative store out of business, and defendant announced he personally was willing to accept the challenge and fight the matter out to the bitter end, and urged the students to join heartily in his fight and assist their own organization. He, in conclusion, warned them that they should keep in mind the fact that the co-operative company had a shrewd and unscrupulous enemy.

After a careful review of the facts in the case we hold that plaintiff has not shown defendant to have been actuated by ill will or malice in the uttering of the words charged and proven to have been spoken.

In view of what we have held above it is not necessary to discuss at length the question, whether or not the statements made and complained of herein were true, as alleged in defendant's answer. We feel however, that plaintiff's case alone, as presented in the record before us, shows that the statements proven by plaintiff to have been made by the defendant, on the occasion complained of, were in substance true. There could be but one conclusion reached by reasonable minds on this record; not alone that the statements made did not intend to charge the plaintiff with the commission of any statements that plaintiff was a shrewd and unscrupulous enemy of the co-operative store.

In view of what we have stated above we hold that the statements complained of were made without malice, in good faith, and were based upon a reasonable cause and were made upon an occasion which made them a qualifiedly privileged communication. The trial court should, at the close of plaintiff's case, have sustained the demurrer to the evidence which was interposed by defendant.

The judgment of the trial court is reversed. *Reynolds, P. J.*, and *Allen, J.*, concur.