Wellborn ESTES, Plaintiff-Appellant,

v.

LAWTON–BYRNE–BRUNER INSURANCE AGENCY COMPANY, a Corporation, Defendant-Respondent.

Nos. 32719, 32792.

St. Louis Court of Appeals.

Missouri.

Feb. 3, 1969.

**686**

Coleman, Ross & Cekovsky, Sidney B. McClanahan, Clayton, for plaintiff-appellant.

Evans & Dixon, Ralph C. Kleinschmidt, St. Louis, for defendant-respondent.

BRUCE NORMILE, Special Judge.

This is an action for libel. At the trial the jury returned a verdict in favor of plaintiff in the amount of Two Thousand Dollars ($2,000.00) punitive damages. No actual damages were awarded.

The defendant's timely motion for judgment in accordance with its motion for a directed verdict was thereafter sustained by the trial court on the ground that a qualified privilege existed for the alleged defamation and that there was no evidence to support a submission to the jury requiring a finding of actual malice to overcome the privilege.

From this order of the trial court, the plaintiff has appealed. Plaintiff (appellant) states that the general question for decision on this appeal is whether the trial court was warranted in ruling that the qualified privilege was applicable to the occasion in question.

The parties agree that the facts in the case are, as stated by the trial court, "for all intent and purposes, undisputed by the parties." Evidence on the part of the plaintiff was elicited from plaintiff, himself, and from a Mr. Ben Fishman, one of the persons who received the communication alleged to be defamatory. Plaintiff, Wellborn Estes, testified that he was an insurance agent and broker, with offices in Clayton, Missouri. He had sold some fire insurance on a property located at 3723 Olive Street, originally owned by a man named Myer who sold the property to a Mr. and Mrs. Spaser, who then sold it to Mr. Ben Fishman. Each time the property was sold, plaintiff sold the new buyer fire insurance on the property. Mr. Fishman actually owned the property with his wife and another couple, Mr. and Mrs. Jacobs. At the time the insurance was sold, plaintiff placed this insurance with the Laclede Agency, which later merged with defendant, respondent herein, Lawton-Byrne-Bruner Insurance Agency Company. The defendant then placed the insurance with a fire insurance company. Both plaintiff and defendant received commissions on the sale of this insurance. Mr. Fishman had purchased the property in May of 1962. And this was when plaintiff first became acquainted with him by reason of selling the insurance on this property. Plaintiff had not been able to place the insurance on this property with any of the companies for which he was an agent for the reason that it was an undesirable property. It was for this reason that he placed the insurance on the property through the defendant's agency. In March, 1963, the insuring companies notified the defendant,

Lawton-Byrne-Bruner Insurance Agency Company, that they no longer cared to remain on the risk, and directed the defendant agency to cancel the policies within thirty (30) days. Defendant then notified plaintiff to inform the insured that the policies were to be cancelled and to pick up the same. The defendant could have notified the policyholder directly of the cancellation, but notice was given to plaintiff as a courtesy to the agent.

Plaintiff further testified that upon receiving this notice he wrote to Mr. Ben Fishman, one of the owners of the premises, advising him that the policies were to be cancelled. This letter to Mr. Fishman was sent to the address of the insured property at 3723 Olive Street which was neither Mr. Fishman's place of business nor his residence. Plaintiff conceded that his secretary might have made an innocent mistake in sending the letter to this address. Mr. Fishman later told plaintiff that he had not received this notice. About a month later, plaintiff was contacted by telephone by the defendant about picking up the policies. At that time, plaintiff asked the defendant, Lawton-Byrne-Bruner, to send a formal notice of cancellation direct to Mr. Fishman and the other insureds.

Plaintiff thereafter received a telephone call from Ben Fishman who asked what was going on, that he had received a formal notice of cancellation for non-payment of premium on his policies. Plaintiff went right down to see Mr. Fishman and explained to him that the premiums had been paid.

The cancellation notice received by Fishman was entered into evidence as Plaintiff's Exhibit Number I and was in the following form:

"CANCELLATION NOTICE

LAWTON–BYRNE–BRUNER
Insurance Agency Co.
401 Pine Street St. Louis 2, Mo.

St. Louis, Mo., APRIL 16, 1963

BEN FISHMAN & BERTHA FISHMAN AND
OSCAR JACOBS AND MARGO JACOBS

604 EASTGATE

ST. LOUIS, MISSOURI

You are hereby notified that payment has not been made at this office of the premium of $160.65 for Policy No. 7233310 dated MAY 22 1962 for $5.000.00 upon your BUILDING at 3723 OLIVE STREET issued for you through this office in the NATIONAL FIRE Ins. Co. and that unless same is paid on or before 12 o'clock Noon of the fifth day after receipt of this notice, we shall cancel the insurance under said policy upon our books for non-payment of premium, terminating our liability thereunder from that date, in accordance with the printed conditions of this policy.

Yours respectfully,

LAWTON–BYRNE–BRUNER
INSURANCE AGENCY CO."

After visiting Fishman and seeing the above notice, plaintiff immediately went back to his office, called Lawton-Byrne-Bruner, and talked to a Miss Rutherford. Miss Rutherford treated the plaintiff properly and was courteous and polite to him. Plaintiff asked why the notices of cancellation for non-payment of premium had been sent, stated that they had in fact been paid, and requested that the agency send a letter to Mr. Fishman, and the others, to that effect. Miss Rutherford indicated that she could not write a letter to Mr. Fishman and plaintiff asked to speak to Mr. Farrington, the president of Lawton-Byrne-Bruner. Plaintiff explained the situation to Mr. Farrington and said, "I want you to write a letter, this is a clerical error, won't you write a letter to my insured and explain the policy premiums were paid * *." Mr. Farrington also declined to write a letter but told plaintiff that he would make a telephone call to Mr. Fishman, or anyone else plaintiff wanted, to explain the situation.

About two days later, plaintiff called Mr. Farrington again and asked for a letter. At trial, plaintiff testified as to the second visit with Mr. Farrington and stated that: "I explained it was purely a clerical error * * *." During the conversations with Mr. Farrington, plaintiff did not notice that Mr. Farrington spoke in anger or that there was any evidence of ill will toward plaintiff. The phone conversations with Mr. Farrington were on the 16th and 18th of April, 1963. A day or two later plaintiff and his attorney went to see Mr. Farrington. Thereafter on May 13th this action was filed. Subsequently, Lawton-Byrne-Bruner sent a letter to plaintiff stating that a mistake had been made and the notice of cancellation had come out on the wrong form, on the basis of non-payment of premium when it should have been under the terms of the policy. A similar letter was later sent to the policyholders.

Plaintiff's only other witness was one of the insureds, Mr. Ben Fishman, who owned the property at 3723 Olive Street together with his wife and Mr. and Mrs. Oscar Jacobs. Mr. Fishman testified that he purchased this property in 1962 and that these policies already existed on the property. The witness then renewed the policies with plaintiff. Mr. Fishman had not known the plaintiff prior to that time. Upon renewal, the premium was paid to Mr. Estes. In April, 1963, Mr. Fishman and the other owners received notices by certified mail that the policies were cancelled for non-payment. The notices were signed by defendant Lawton-Byrne-Bruner Insurance Agency Company. Mr. Fishman thereupon contacted plaintiff who came to see him that day or the next day. Plaintiff told Mr. Fishman that the premium was paid and not to worry about it. A month or so later Mr. Fishman received a letter from Lawton-Byrne-Bruner indicating that the policies were paid.

Prior to receiving notice from Lawton-Byrne-Bruner, Mr. Fishman had not been notified by plaintiff that the policies were to be cancelled. Plaintiff did not indicate to Mr. Fishman that he was going to replace the policies in any other company. Mr. Fishman testified that he had other properties and always insured them with "whoever gives me the cheaper price." Mr. Fishman had no special relationship with Mr. Estes but would buy from him if he had a cheaper policy. Upon this evidence, plaintiff rested his case. Defendant's motion for a directed verdict at the close of plaintiff's case was then filed and overruled.

Evidence on the part of the defendant was elicited from only two witnesses. Judy Astrankas testified that she was employed by Lawton-Byrne-Bruner in 1963 and at the time of trial. She worked in the Outside Broker's Department placing business for them. The witness testified that in March of 1963 a request was received through the underwriters in connection with cancellation of some policies that the outside broker, plaintiff, Wellborn Estes, had written on the Olive Street property. Mrs.

Astrankas had written a letter to Mr. Estes about March 18th advising that the companies were calling in the policies and requesting Mr. Estes to pick them up. About a month later, the witness followed the matter up by a telephone call to Mr. Estes. The plaintiff requested her to go ahead and send a direct notice through Lawton-Byrne-Bruner. Mrs. Astrankas then advised the underwriter and the matter went out of her hands. The witness was not personally acquainted with plaintiff.

Defendant's other witness, Virginia Downer, testified that she was also an employee of Lawton-Byrne-Bruner in 1963 and at time of the trial. In 1963, she had been a fire-rate clerk. At that time, the witness received from the underwriters an instruction that the policy on the Olive Street property was to be cancelled due to the poor condition of the property. The witness knew that the cancellation had nothing to do with non-payment of the premium. Mrs. Downer gave her policy writer instructions as to sending the notice to the assureds. The lady who was the policy writer in 1963 was no longer working for Lawton-Byrne-Bruner at time of trial.

Mrs. Downer identified defendant's Exhibit A, "Cancellation Notice of Lawton-Byrne-Bruner Insurance Agency Company for Non-Payment" which was an uncompleted blank form identical to Plaintiff's Exhibit I. She also identified defendant's Exhibit B, "Cancellation Notice of Lawton-Byrne-Bruner Insurance Agency Company at the Insurance Company's Request." These Exhibits were put in evidence and are very similar in appearance. Both notices are the same size, approximately five and one-half inches by eight and one-half inches ($5\frac{1}{2}'' \times 8\frac{1}{2}''$).

Defendant's Exhibit B was in the following form:

"CANCELLATION NOTICE

LAWTON–BYRNE–BRUNER
Insurance Agency Co.
Pierce Bldg.

St. Louis, Mo. —————— 194—

The —————— Fire Insurance Company, of ——————, hereby gives formal notice of its intention to cancel Policy No. ——————, issued ————, to —————— for $————— in accordance with the stipulations and provisions of said policy.

Please take notice that all liability of said Insurance Company shall absolutely cease at noon of the fifth day after receipt of this notice, unless surrender thereof to said Company is made sooner; the return premium, if any, under said policy will be paid upon demand at our office.

Yours respectfully,

LAWTON–BYRNE–BRUNER
INSURANCE AGENCY CO.

Agent."

Mrs. Downer also testified that on cancellation of policies it was necessary to make a report to the Missouri Audit Bureau and state the reasons for the cancellation. In the instant case, Mrs. Downer made the report to the Missouri Audit Bureau and notified them the policy was to be cancelled at "Company Request." On cross-examination, Mrs. Downer further indicated that Lawton-Byrne-Bruner was one of the largest insurance agencies in the State of Missouri.

Defendant thereafter rested, the evidence was closed, defendant's motion for directed verdict at the close of all the evidence was also filed and overruled. Both of defendant's motions for directed verdict, among other grounds, alleged that the evidence affirmatively showed a qualified privilege and that there was no showing or evidence of malice or bad faith on part of the defendant. It was upon this basis that trial court later sustained defendant's motion for judgment in accordance with its motion for directed verdict.

Although defendant (respondent), in its motion for directed verdict, its motion for judgment in accordance with motion for directed verdict, and in its appellate brief, urged that there was no actionable defamation since the words in the publication were innocent upon their face, did not refer to plaintiff, and did not defame plaintiff, the trial court did not find it necessary to rule upon this point; and it is not necessary that it be considered here.

The general issue raised on this appeal is whether the trial court was warranted in finding a qualified privilege.

■ Assuming then that the publication was both defamatory and false, we turn to the question of qualified privilege. " * * A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matter which, without such privilege, would be actionable. Upon such occasion and under such circumstances, although the matter communicated is defamatory and false, the law will not infer malice, but the existence thereof must be shown by some evidence beyond the falsity of the statements communicated. * * *." Hellesen v. Knaus Truck Lines, Inc., Mo., 370 S.W.2d 341, 1. c. 345; Smith v. J. J. Newberry Company, Mo.App., 395 S.W.2d 472, 1. c. 478; Polk v. Missouri-Pacific R. Company, 156 Ark. 84, 245 S.W. 186, 29 A.L.R. 220.

A somewhat longer definition is as follows: "It is the law in this state that before the defense of qualified privilege is available it must appear that the statements made by the defendant were made in the discharge of some duty, either public or private, either legal, moral, or social, to a person or persons having a corresponding interest or duty, and were spoken in connection with and were relevant and germane to some matter involving such an interest or duty, and that the words were spoken in the interest of or for the protection thereof. In addition they must have been uttered in good faith and spoken on a proper occasion, from a proper motive and based upon a probable cause, and in the honest belief that such statements were true." Garey v. Jackson, 197 Mo.App. 217, 193 S.W. 920, 1. c. 922; also see 53 C.J.S. Libel and Slander § 89, pp. 143, 144, 145; Smith v. J. J. Newberry Company, supra; Rauch v. Gas Service Company, 241 Mo. App. 976, 235 S.W.2d 420; Boehm v. Western Leather Clothing Company, Mo.App., 161 S.W.2d 710; Gust v. Montgomery Ward and Company, 229 Mo.App. 371, 80 S.W.2d 286.

■ The sending of the cancellation notice by the defendant did involve a communication in which all the parties had an interest. It was done by the defendant in the discharge of a duty to the other parties involved including the insurance com-

pany. It was actually done at the request of plaintiff. Under such circumstances, the communication would normally be a privileged one; and the trial court would be justified in so holding. In this regard, it is the duty of the trial court, rather than the jury, to make the determination as to whether the defense of qualified privilege applies. Fisher v. Myers, 339 Mo. 1196, 100 S.W.2d 551; Warren v. Pulitzer Publishing Company, 336 Mo. 184, 78 S.W.2d 404; McClung v. Pulitzer Publishing Company, 279 Mo. 370, 214 S.W. 193; Hellesen v. Knaus Truck Lines, Inc., supra; Gust v. Montgomery Ward and Company, supra. Nevertheless, the burden is on the defendant to convince the court that the defense does apply. Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S.W. 100, 26 L.R.A.,N.S., 1080; McClung v. Pulitzer Publishing Company, supra.

 Once a qualified privilege is found plaintiff can still recover if he shows that the defendant acted outside the privilege. This is done by showing that the statement was made or published in bad faith or with actual and express malice; and the plaintiff has the burden of proving this express malice. See Pulliam v. Bond, Mo., 406 S.W.2d 635, 641; Hellesen v. Knaus Truck Lines, Inc., supra; State ex rel. Zorn v. Cox, 318 Mo. 112, 298 S.W. 837; Kleinschmidt v. Johnson, Mo., 183 S.W.2d 82. The question of bad faith or malice is for the jury. Warren v. Pulitzer Publishing Company, supra, unless there is no substantial evidence of express or actual malice, in which case the court should direct a verdict. Holmes v. Royal Fraternal Union, supra; Gust v. Montgomery Ward and Company, supra.

 Based upon the above general statements of the law and the facts in this case it would appear that the trial court was justified in ruling that "qualified privilege" applied. However, defendant urges that the trial court could not find qualified privilege for two other reasons. First, that the privilege could not exist since de-

fendant, in fact, knew the falsity of the communication; and second, that there could be no privilege since the making of the untrue statement was not "without negligence."

As to the first point, defendant cites the case of Pulliam v. Bond, 406 S.W.2d 635, l. c. 642, as follows: " 'So it is generally held that if a communication is a privileged one, *made in good faith, without malice, under probable cause to believe it to be true, and without negligence*, the falsity of the communication does not destroy the privilege.' 53 C.J.S. Libel and Slander § 99, p. 156. To the same effect, see Kleinschmidt v. Johnson, Mo., 183 S.W.2d 82, 86, and 53 C.J.S. Libel and Slander § 89, p. 143. *There is no evidence that the defendants, knowingly or in bad faith included any false statements in the communication in question.*" (Appellant's emphasis.) It is appellant's position that since defendant knew that the premiums were paid, there could be no "probable cause to believe it to be true;" and this being so, the falsity of the communication would destroy the privilege. Defendant also cites the case of Trice v. Lancaster, Mo.App., 270 S.W.2d 519, which also refers to communications being privileged " * * * if made in good faith, without express malice and *with probable grounds for belief.*"

On analysis, all the references made in these opinions to statements being "made in good faith, without malice, under probable cause to believe (them) to be true," go to the actual and express malice which is required to overcome and destroy the privilege.

Did the defendant "knowingly" include false statements in the communication in question in this case? On the contrary, it is clear that the "policy writer" was instructed to send a cancellation notice "at company request." Mrs. Downer knew that this was required in this case and so instructed the policy writer. Plaintiff in his testimony referred to a "clerical mistake." Defendant admits there was negli-

gence on the part of the person sending the notice in sending the wrong one of two very similar forms. Thus, the false statement was "negligently" rather than "knowingly" included in the communication which was sent.

In further urging the point that defendant's knowledge of the payment of the premium overcomes the privilege, plaintiff cites 53 C.J.S. Libel and Slander § 215, p. 326, as follows: "The knowledge of the falsity of the communication is conclusive evidence of the malice required to destroy the privilege." C.J.S. cites the case of Warren v. Pulitzer Publishing Company, 336 Mo. 184, 78 S.W.2d 404 to support this statement. However, the C.J.S. statement from Warren was abbreviated. The statement of law in Warren is the statement from another case with some additional language added by the writer of the opinion as follows: " 'Proof of the falsity of the facts and knowledge of such falsity is proof of actual malice' (Cook v. Pulitzer Pub. Co., 241 Mo. 326, loc. cit. 362, 145 S.W. 480, 492), because that does, unquestionably, show a wrong motive." To fit within the Warren case it would be necessary that the knowledge of the falsity of the communication be the knowledge of the person uttering or publishing the alleged defamatory statement or else a wrong motive would not unquestionably be shown. The import of this statement of law again relates to the malice necessary to overcome the "qualified privilege." It is apparent that the negligent act of the policy writer could not create an improper motive on the part of Mrs. Downer or Mrs. Astrankas, defendant's employees who were aware that premium was paid but who were unaware that the wrong form had been sent. The question then becomes: . Can the knowledge of Mrs. Downer and Mrs. Astrankas that the premiums were paid, when coupled with the negligent act of the policy writer in sending the wrong form of cancellation, combine to create an improper motive on the part of the policy writer to be charged against the defend-

ant in preventing the existence of the qualified privilege.

This brings us to plaintiff's point that the negligent selection and publication of the wrong cancellation form destroyed the qualified privilege. "A libel is a tort, and, generally speaking, neither the intention with which a tort feasor acted, nor the state of his feelings toward the person injured or mankind at large, lessens his responsibilities for the injuries actually caused by his wrongful act." Farley v. Evening Chronicle Publishing Company, 113 Mo.App. 216, 87 S.W. 565. Thus there can be a negligent libel since the legal malice is inferred from the fact of a false and defamatory publication. It is stated in the Restatement, Torts, § 577, that: "Publication of defamatory matter is its communication intentionally or *by a negligent act* to one other than the person defamed." (Emphasis added.) For this reason, an optional method of submitting an accidental publication is provided for under our instructions. "Second, defendant knew or by using ordinary care should have known that the words would be read * * *." MAI 23.06, Notes on Use. Also see Notes on Use, MAI 23.09 and 23.10 and Committee's Comment under MAI 23.10. However, the finding of a qualified privilege removes this implied or legal malice.

The question then becomes whether the negligent act demonstrates the actual or express malice required to overcome the qualified privilege. Plaintiff's only citation of authority to this effect is the quotation given above from the Pulliam case that " * * * if a communication is a privileged one, made * * * *without negligence*, the falsity of the communication does not destroy the privilege." (Emphasis added.) The quotation given cited 53 C.J.S. Libel and Slander § 99, p. 156, which states the exact language of the quotation. The footnote in C.J.S. to that statement does not cite any Missouri cases, nor does it indicate whether those cases cited involved "negligence" situations or

situations involving malice, probable cause, or good faith, all of which were in the general statement being footnoted. The citation in Pulliam of Kleinschmidt v. Johnson, Mo., 183 S.W.2d 82, 86, following the above quotation relates only to the defense of justification and does not refer to negligence as a defense to a qualified privilege. Following this same statement of law, including the phrase "without negligence," Pulliam also cites 53 C.J.S. Libel and Slander § 89, p. 143. However, the title of that section of C.J.S. is "Qualified Privilege," and it gives the general definition. That section does not mention the lack of negligence as a requirement for a qualified privilege nor otherwise refer to negligence as demonstrating the actual malice required to overcome the privilege. Excepting Pulliam, no other Missouri case includes the phrase "without negligence" in defining a qualified privilege. The Pulliam case, itself, involved an intentional publication of defamatory matter which was held privileged. In Pulliam, the court sustained a directed verdict in favor of defendant on the basis that a qualified privilege was found and there was not sufficient evidence of malice to overcome it.

In A. B. C. Needlecraft Company v. Dunn and Bradstreet, Inc., (C.C.A.2d 1957), 245 F.2d 775, 777, the court, citing New York precedents, stated: "The law of New York clearly requires more than mere negligence to destroy the privilege. 'Malice * * * means more than mere negligence or want of sound judgment. * * * It means more than hasty or mistaken action.'" Also see 53 C.J.S. Libel and Slander, § 215 c (3): "* * * it has been held that mere negligence is not malice * * *." No Missouri case has considered negligence as malice. However, in Warren v. Pulitzer Publishing Company, 336 Mo. 184, 78 S.W.2d 404, l. c. 419, it is stated, "It is likewise a wrong motive, which would tend to show malice, to state something as the truth without knowing whether it is true, recklessly, and without

any reasonable attempt to find out about it or with complete disregard of other known facts." This language is in accord with the definition given in Boehm v. Western Leather Clothing Company, Mo. App., 161 S.W.2d 710, 717 as follows: "By actual or express malice is meant malice in fact as distinguished from implied malice, that is, the actual presence of an improper motive on the part of the defendant implying the purpose and desire to injure. It may, and in common acceptation does, denote that the defendant was actuated by spite or ill will towards the plaintiff, but in its legal significance such degree of personal hostility is not in all events essential. On the contrary, it is the willfulness or evil intent of the act—the wanton disregard of the rights and interests of the party injured—which suffices to render the act malicious in its legal sense; and hence the usual definition that by malice is meant the intentional doing of a wrongful act without just cause or excuse." Also see Rauch v. Gas Service Company, 241 Mo.App. 976, 235 S.W.2d 420, 429; Conrad v. Allis-Chalmers Manufacturing Company, 228 Mo.App. 817, 73 S.W.2d 438, 446.

Obviously, negligence alone does not constitute the willfulness, or the recklessness, or the wanton disregard of the rights of others required for actual or express malice. Negligence does not imply the actual presence of an improper motive indicating a purpose or desire to injure. The "intentional" doing of a wrongful act without just cause or excuse is something far different than the "negligent" doing of a wrongful act. We thus hold that mere negligence alone is not sufficient to establish the actual and express malice which is required to overcome or destroy a qualified privilege. Neither the knowledge of some of defendant's agents as to the falsity of the publication which was finally made by another agent, nor the negligence of the last agent were sufficient to prevent the qualified privilege from coming into existence.

■ Once the qualified privilege was properly found by the trial court to exist, was there sufficient evidence of actual or express malice to be submitted to the jury? In effect, the appellant concedes that the sending of the wrong form was a negligent act or, as plaintiff termed it at time of trial, "a clerical error." We have already found that mere negligence is not enough to demonstrate malice to destroy the privilege. In his brief, plaintiff also suggests that the failure of defendant to make an immediate written retraction of the alleged defamation and the fact that plaintiff and defendant were engaged in the highly competitive insurance business, are additional items indicating an actual or express malice. However, no improper motive, or bad faith, or intent to harm on the part of the employee or of defendant company is shown. The motive involved was the sending of a notice of cancellation. Plaintiff's testimony established that no ill will or lack of courtesy was shown to him by any of defendant's employees. The notice was sent as a courtesy to plaintiff and at his request. Since a qualified privilege was properly found to exist in this case, it would have been necessary for the trial court to have required plaintiff to include in his verdict directing instruction MAI 23.06, the fourth paragraph thereof as follows:

"Fourth, that such statement was [written] [printed] ·[knowing it to be false] or [without knowing whether it was true or false in reckless disregard for the plaintiff's right], and with the intent to damage plaintiff."

The trial court found that there was not one scintilla of evidence to support the inclusion of this paragraph. The trial court was correct in so finding and in holding that a submission requiring a finding of actual malice was not supported.

The judgment is affirmed.

ANDERSON, P. J., and SAMUEL E. SEMPLE, Special Judge, concur.