Richard W. WHITE,
Plaintiff-Respondent,

v.

AMERICAN POSTAL WORKERS
UNION, ST. LOUIS, Missouri
LOCAL, Defendant-Appellant.

No. 39341.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 21, 1979.

Murtha, Cafferky, Powers & Jordan, Mose Lewis III, Washington, D. C., Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, for defendant-appellant.

Donald Sommers, St. Louis, for plaintiff-respondent.

CRIST, Judge.

Action for libel. Jury verdict in favor of plaintiff and against defendants American Postal Workers Union and Odis Keys in the sum of $10,000.00 actual damages sustained by trial court. We affirm.

Plaintiff's case was predicated on malice of defendants in the posting of an agenda letter on September 7, 1974, which had been sent to the Postmaster by defendant Odis Keys in his capacity as the President of the Clerk Craft of the defendant Union. Agency was admitted. The Union only appeals.

Plaintiff was a nurse. He was a part of management of the United States Postal Service. He acted in his capacity of nurse for that part of some four thousand employees of the Union at the main St. Louis Post Office.

Prior to the posting of the September 7, 1974 agenda letter, plaintiff and Keys had met only once. This meeting occurred when Keys came into the First Aid Room when plaintiff was on duty and requested some mycitracin ointment for his eye. Plaintiff refused this request because under Post Office regulations he was not authorized to diagnose and treat an eye infection and because the ointment required a prescription. Keys became "very upset, very mad, and there were words exchanged between us." Plaintiff then sent Keys home because he thought Keys had a contagious eye infection.

Keys said the eye ointment episode had nothing to do with the letter he wrote to the Postmaster. He did, however, list himself as a witness, in Answers to Interrogatories, to an item in the agenda letter that referred to plaintiff deliberately provoking argument. He admitted that there was an argument the night he went to the First Aid Room. He did not witness any of the other occurrences mentioned in the agenda letter.

The letter from Keys to the Postmaster, Claude J. Bakewell, was in pertinent part as follows:

"2. Registered Nurse Mr. Richard White of the First Aid Unit has been establishing policies concerning the use of sick leave; On numerous occasions has encouraged employees to call in sick before coming to work rather than use the First Aid Facility; Are counselling employees concerning their illness and rebuking them in an aloud adous (sic) manner; Has on occasions left employees stranded while waiting for service, saying, 'he had to go to the cafateria (sic) for coffee break;' Has on occasions deliberately without provocation provoked arguments; Has attempted to probe female visitors in debauchery.

If possible the Union would like to have RN Mr. White presint (sic) to give account of his action on these matters."

The letter was posted in the Post Office by defendants on bulletin boards that were accessible to the four thousand employees. Plaintiff testified that he received no complaints prior to the publication of the aforementioned letter regarding the matters contained therein. After the letter was posted, plaintiff wrote Keys and requested documentation of the charges contained in the letter or a retraction and an apology.

Keys responded by writing plaintiff and stating he had signed statements in his file based on employee contacts with plaintiff while visiting the First Aid Unit. He said he also had a transcript of his personal debate with the plaintiff regarding Postal Service medical requirements and plaintiff's direction of employees contrary to certain postal regulations. At the time Keys wrote this letter, he did not have signed statements from any employee regarding the complaints. He was able to later obtain only one written statement regarding the complaints after he had requested same from four fellow employees. Keys testified with respect to the charges against plaintiff that the president of the Union, Kirksey, "had a discussion and decided the matter had subsided and there wasn't complaints coming in and decided to let the matter drop."

Keys further testified that employees had orally complained to him about plaintiff. He had looked up the meaning of the words

"probe" and "debauchery" in a dictionary before he made the accusation in the agenda letter. Only one person was named by Keys in answer to an interrogatory relating to "female visitors" known to him who were probed in debauchery by plaintiff.

The person so named was called as a witness for the defense and testified that she had complained to Keys because plaintiff had, on two occasions, asked her if she was going to a doctor, whether or not she took birth control pills, and whether she had a boyfriend or husband. She took offense to these inquiries. She did not say that plaintiff touched her in any fashion, and, particularly, did not testify that he probed her into debauchery. She did not testify to any overt action suggestive of debauchery on the part of plaintiff.

Plaintiff testified that the medical records of this female patient showed that she had been suffering from dysmenorrhea, a gynecological condition. His inquiries were ordinary and necessary in order to properly treat her condition. He denied probing any female visitors in debauchery, nor was he ever accused of doing so other than by the September 7, 1974 agenda letter. He specifically denied ever laying a hand on the female witness who testified for the defense. He personally showed the agenda letter to eight persons of whom only one worked at the Postal Service. Some of these persons already knew about the letter, but he did not know how they so learned about it.

President Kirksey testified that the Labor-Management Agenda, such as the one prepared by Keys on September 7, 1974, was distributed to the heads of various departments concerned with items thereon so that someone from that department with knowledge could attend the meeting. He had established the practice of placing the agenda on a bulletin board when he was President of the Clerk Craft "in order that the membership would know what items were being discussed at labor-management meetings." That practice continued when he became President of the defendant Union.

In July, 1975, plaintiff was discharged from the Post Office on charges that were not contained in the September 7, 1974 letter. Plaintiff was of the opinion that he was eventually fired because of the letter. But he had no proof to support that opinion.

Plaintiff testified that as a result of the agenda letter, he was subjected to a bombardment of questions by fellow employees, including other nurses, about the validity of the accusations. He was questioned by his superiors and subjected to jokes by male employees. He noticed a difference in attitude of females who would come into the First Aid Unit after the letter was published. He began getting a barrage of complaints from higher level supervisors on charges without substance. He had no similar complaints prior to the publishing of the agenda letter. The ridicule of him continued until the time of trial. Several persons who were not connected with the Postal Department heard about the letter and questioned him about it long after it was published. He had to show the letter to friends and former associates by way of explanation of its contents.

Without objection on this appeal, the case was submitted to the jury by the following main verdict-directing instruction:

"Your verdict may be for plaintiff if you believe:

First, defendant wrote a letter containing the statement 'has attempted to probe female visitors in debauchery', and

Second, such statement tended to expose plaintiff to ridicule and damaged plaintiff's reputation, and

Third, such statement was read generally by the employees of the Postal Service at 1720 Market Street, and

Fourth, that when defendants wrote the statement they knew it was false or entertained serious doubts as to its truth. MAI 23.06 Offered by Plaintiff."

Union contends, and plaintiff concedes, that the statement "has attempted to probe female visitors in debauchery" was made under circumstances that provided defendants with a qualified privilege to make

such statement. The existence of a qualified privilege, however, does not preclude a party from establishing that defendants acted outside such privilege. *Estes v. Lawton-Byrne-Bruner Insurance Agency*, 437 S.W.2d 685, 691 (Mo.App.1969).

Referring to the main verdict director, the only real question is whether or not there was substantial evidence that defendants knew the statement was false or entertained serious doubts as to its truth. This instruction is worded in accordance with an "actual" as opposed to "express" malice standard. The issue of whether this was the correct standard under the facts of this case is not before us. *See Ramacciotti v. Zinn*, 550 S.W.2d 217, 226 (Mo.App.1977); *Whitmore v. Kansas City Star Co.*, 499 S.W.2d 45 (Mo.App.1973). *See also Pulliam v. Bond*, 406 S.W.2d 635 (Mo.1966).

We believe there was substantial evidence of the malice as set out in plaintiff's instruction. Prior to the publication of the defamatory letter, Keys had met with plaintiff on only one occasion. On that occasion, Keys argued with plaintiff because plaintiff refused to give the defendant eye medication which the plaintiff was not authorized to dispense. The jury could believe that Keys was very upset and angry with plaintiff after the meeting. Shortly after this incident, Keys published the agenda letter which was posted on various bulletin boards throughout the Post Office building so that it could be read by four thousand employees. There were many complaints about plaintiff in the agenda letter. Keys did not discuss with plaintiff any of the complaints in the letter before it was published, although he stated that he could have done this. Keys never presented plaintiff with documentation of the complaints. He did not present a documentation of the charges at a Labor-Management meeting after specific request had been made for the same. He conceded that his statement to plaintiff indicating the existence of written statements to back his charges was untrue. He was later able to obtain only one statement from one employee, although he requested statements from several regarding the alleged complaints af-

ter the letter was posted. In Answers to Interrogatories he named only the female person who testified as a person Keys claimed to have been probed in debauchery.

The evidence was such that a jury could reasonably find that Keys knew that plaintiff had not committed the alleged act published in the letter, or that he had serious doubts that plaintiff had probed female visitors in debauchery.

Defendant next complains that the judgment of $10,000.00 was excessive and that there was no proof of malice nor any resulting harm. We have already determined that there was substantial evidence of malice as defined in the instruction. The statement made was actionable per se. Section 537.110 RSMo. 1969. Proof of actual or constructive pecuniary loss was not necessary. *Brown v. Publishers: George Knapp & Co.*, 213 Mo. 655, 112 S.W. 474 (1908).

Defendant says that the Supreme Court has dictated the bases of recovery in cases in which labor is involved, thus pre-empting cases such as *Brown*, citing *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) and *Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). Both *Linn* and *Austin* involved statements made during union organizing efforts and invoked considerations not present in this case. We do not find defendant's argument on this point persuasive.

Defendant next alleges error in the giving of a burden of proof instruction based on MAI 3.01 instead of its refused modification of 3.01 requiring "clear and convincing evidence." Defendant relies on the same line of federal decisions we distinguished, *supra*, in discussing plaintiff's burden of proof to establish damages. This case does not involve a labor dispute of the type invoking the special rules set out in those cases. Cf. *Austin* and *Linn*. The authority relied upon by defendant on this point is thus distinguishable. We express no view on the applicability of such an

instruction in a labor case within the purview of the *Austin* and *Linn* decisions.

 Finally, defendant alleges as prejudicial to defendant the court's exclusion of evidence of events subsequent to the publication of the libelous letter, and the exclusion of evidence that allegedly would have impeached plaintiff's testimony and would have shown the absence of damage. Defendant did not make proper offers of proof regarding any of such evidence he complains about. We find no error in the record. The trial court has wide discretion in the introduction of evidence on direct and cross-examination. *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623 (Mo.1968).

The judgment is affirmed.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.